PRESENT: All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 042204   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    June 9, 2005
CURTIS DARNELL HILLIARD

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in holding that a defendant's motion to suppress an incriminating statement should have been granted because he made the statement in response to police questioning conducted after he invoked his right to counsel.

Curtis Darnell Hilliard was tried in the Circuit Court of the City of Richmond on charges of murder, in violation of Code § 18.2-32; use of a firearm in the commission of murder, in violation of Code § 18.2-53.1; maliciously shooting into an occupied vehicle, in violation of Code § 18.2-154; and discharging a firearm within 1,000 feet of a school, in violation of Code § 18.2-280.  Before trial, Hilliard filed a motion to suppress a statement he gave to the police, claiming a violation of his Fourth, Fifth, and Sixth Amendment rights, as well as certain rights under the Constitution and Code of Virginia.  The circuit court denied the motion.  A jury convicted Hilliard of all charges and the circuit court sentenced him to a term of 61 years' imprisonment.

On appeal, after a panel of the Court of Appeals affirmed the convictions in an unpublished opinion, the Court granted Hilliard's petition for a rehearing en banc, stayed the mandate of its earlier decision, and reinstated the appeal. On rehearing en banc, the Court of Appeals affirmed in part, and reversed in part, the circuit court's judgment and remanded the case to the circuit court for further proceedings. Hilliard v. Commonwealth, 43 Va. App. 659, 677-78, 601 S.E.2d 652, 661 (2004). The Court held that Hilliard made a clear and unequivocal request for counsel during the course of a police interrogation, and that the circuit court erred in refusing to suppress his later admission that he had been present at the scene of the crime. Id. at 675, 601 S.E.2d at 660. The Commonwealth appeals, and Hilliard assigns cross-error.

The facts relevant to the motion to suppress are undisputed. In July 1999, Anthony Robinson, Jr. was shot and killed. Hilliard was arrested for Robinson's murder and, while in police custody, was questioned by Detectives Levin White and Martin Kochell of the City of Richmond Police Department.

Detective Kochell advised Hilliard of his Miranda rights and asked him to sign a waiver form indicating that he understood his rights, including the right to have an attorney present during police questioning. Immediately after being informed of his rights, and before he signed the form, Hilliard

2

made his first reference to an attorney, asking, "Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?" Detective White replied, "That's up to you. Like [Detective Kochell] said, all we're doing today is just trying to get your side of the story."

Detective White informed Hilliard that they could not continue their discussion until he signed the waiver form. Hilliard executed the form.

A few minutes later, in response to questioning by the detectives, Hilliard made his second alleged request for an attorney, stating:

> I need to say that . . . I'm not saying that I know anything. I'm not saying that I know the person. You know what I'm saying? The only thing, . . . like I said, I would like to have somebody else in here because I may say something I don't even know what I am saying, and it might f[] me up, might jam me up in some incidents, and I don't want that to happen, man.

The detectives reassured Hilliard that they were not trying to "jam him up" and continued the interview.

About an hour later, Hilliard made his third alleged request for an attorney. In response to Detective White's request that Hilliard tell his "side of the story," the following exchange occurred:

HILLIARD: Can I get a lawyer in here?

DETECTIVE WHITE: Do you want to do that?

HILLIARD: I already have a lawyer.  I mean, I can talk to you, don't get me wrong.  But I just want to make sure I don't, like I said before, just jam myself up.  And I'll tell you everything that I know.  This is my word.

DETECTIVE WHITE: Okay.  That's fine.

DETECTIVE KOCHELL: That's fine.

HILLIARD: I'm not saying that I will say anything other or just because he's in here.  I just want to, you know, make sure I have . . . I'd feel more comfortable.

DETECTIVE KOCHELL: That's not a problem.  We tried to provide you with a comfortable atmosphere here . . .

HILLIARD: I will say, I will go as far as to say this.  Probably what you all got in [the case file] ain't nowhere near.

.  .  .

DETECTIVE WHITE: Anywhere near . . . of what we know of why it happened?

HILLIARD: Yeah.

DETECTIVE WHITE: Well, that's why we want to hear from you, because we know there's a bigger picture there.  Okay?  You know what the problem is, Curtis, is that you got caught up in it.

HILLIARD: Yeah, I did.  I was there.  I'm going to just say that, I was there.  But before I say anything else, I mean, I already talked to you before we go to court.

After clarifying that Hilliard had admitted being present at the crime scene, but that he wanted to consult with an attorney, Detective White ended the interview.

4

In his motion to suppress in the circuit court, Hilliard argued that he had requested an attorney on three separate occasions, and that the detectives should have ceased questioning him following his first request. After viewing a videotape recording of the police interview, the circuit court denied Hilliard's motion, concluding that Hilliard did not make an unequivocal request for counsel. The circuit court also held that Hilliard's admission that he was present at the crime scene was a volunteered statement, rather than a response to a question posed by the detectives.

The Court of Appeals, en banc, reversed the circuit court's judgment, holding that Hilliard's third alleged request for counsel was unequivocal. Hilliard, 43 Va. App. at 673, 601 S.E.2d at 659. The Court reviewed the videotape of Hilliard's interrogation and concluded that although his first two statements "did not express a clear and unequivocal desire for counsel," his third and final request did, and the police immediately should have ceased the interrogation. Id. at 671, 601 S.E.2d at 658. The Court further held that Hilliard's incriminating statement, that he was present at the crime scene, was the result of express questioning by the detectives after he had invoked his right to counsel. Id. at 675, 601 S.E.2d at 660.

5

On appeal to this Court, the Commonwealth argues that the Court of Appeals applied an incorrect standard of review and improperly considered de novo certain historical facts and subjective aspects of the case.  According to the Commonwealth, the Court of Appeals erroneously conducted a "factual" review of the videotape instead of relying on the circuit court's conclusions drawn from the videotape, which were not plainly wrong.  The Commonwealth also asserts that the Court of Appeals erred in considering whether the detectives subjectively understood Hilliard's comments as invoking his right to counsel.

With regard to the merits of the circuit court's holding, the Commonwealth argues that the Court of Appeals erred in concluding that Hilliard ultimately invoked his right to counsel during the police interrogation.  The Commonwealth asserts that Hilliard's statements were an expression of his "concern about the wisdom of continuing to speak," but did not constitute a clear invocation of his right to an attorney.  The Commonwealth also contends that the Court of Appeals erroneously considered Hilliard's statement, "I already have a lawyer," as a factor in determining whether he had invoked his right to counsel.

In response, Hilliard argues that the Court of Appeals properly reviewed the videotaped interview as part of its duty to conduct a de novo review of the circuit court's legal conclusion that Hilliard's statements were not sufficient to

6

invoke his right to counsel. He further asserts that the Court of Appeals did not commit reversible error in referring to the detectives' subjective beliefs, because the Court did not decide the case based on those beliefs but correctly applied an objective test.

Addressing the merits of the circuit court's holding, Hilliard argues that the Court of Appeals correctly concluded that his third and final request was a clear invocation of his right to counsel. However, asserting cross-error, Hilliard contends that the Court erred in refusing to hold that his two prior statements were similarly unequivocal. He asserts that in each instance, his comments objectively demonstrated that he was invoking his right to counsel, and that the detectives should have ceased questioning him after his first reference to the presence of an attorney.

In resolving these issues, we apply established constitutional principles. The right of a criminal suspect to have an attorney present during custodial interrogation was first articulated by the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 469-73 (1966). The Court held that before interrogating a suspect who is in police custody, law enforcement officers must inform the suspect of certain rights, including the right to the presence and assistance of counsel. Id. at 471. If the suspect waives his Miranda rights, the

7

police are free to begin questioning him; however, if the suspect changes his mind during the interrogation and requests the assistance of counsel, the interrogation must cease until an attorney has been made available to the suspect or the suspect reinitiates the interrogation.  Davis v. United States, 512 U.S. 452, 458 (1994); Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

The question whether a suspect actually invoked his right to counsel involves an objective inquiry.  Id. at 459; Commonwealth v. Redmond, 264 Va. 321, 328, 568 S.E.2d 695, 699 (2002); see Connecticut v. Barrett, 479 U.S. 523, 529 (1987). To invoke this right, a suspect must state his desire to have counsel present with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for counsel.  Davis, 512 U.S. at 459; Redmond, 264 Va. at 328-29, 568 S.E.2d at 699; Eaton v. Commonwealth, 240 Va. 236, 253-54, 397 S.E.2d 385, 395-96 (1990).  If, however, a suspect's reference to an attorney is either ambiguous or equivocal, such that a reasonable officer under the circumstances would only have understood that the suspect might be invoking his right to counsel, the officer is not required to stop questioning the suspect.  Davis, 512 U.S. at 459, 461; Redmond, 264 Va. at 328-29, 568 S.E.2d at 699; Eaton, 240 Va. at 253-54, 397 S.E.2d at 395-96.

8

The issue whether a suspect invoked his right to counsel presents a mixed question of law and fact, which requires the application of these constitutional standards to the facts of a given case. Redmond, 264 Va. at 326, 568 S.E.2d at 697. When an appellate court conducts its independent review of a circuit court's determination of this issue, the appellate court may review the circuit court's findings of historical fact only for clear error and must give deference to the inferences that may be drawn from those factual findings. Id. at 327, 568 S.E.2d at 698; see Ornelas v. United States, 517 U.S. 690, 699 (1996).

Here, the circuit court did not make any factual findings regarding what Hilliard actually said because the parties did not dispute the content of his statements to the police. Therefore, appellate consideration of the circuit court's denial of Hilliard's motion to suppress is restricted to a de novo review of the legal issue whether Hilliard's words, taken in context, were sufficient to invoke his right to counsel. See Redmond, 264 Va. at 327, 568 S.E.2d at 698; United States v. Younger, 398 F.3d 1179, 1185 (9th Cir. 2005); United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993).

Initially, we agree with the Commonwealth's contention that the Court of Appeals erred in referring to the detectives' subjective understanding whether Hilliard invoked his right to counsel. As we emphasized in Redmond, the determination whether

9

an accused actually invoked his right to counsel is a purely objective inquiry.  Id. at 328, 264 Va. at 699; see Davis, 512 U.S. at 459.  Thus, the detectives' subjective understanding is irrelevant to this inquiry and provides no support for the Court of Appeals' holding.  However, we conclude that the Court of Appeals' error in this regard was harmless because the language at issue was dictum stated by the Court after it had completed the objective test mandated by Davis.

We next consider the Commonwealth's argument that the Court of Appeals erroneously conducted a de novo review of the historical facts of the case.  Under the standard of review stated above, the Court of Appeals was required to uphold the circuit court's determination unless the historical facts, as a matter of law, did not support the circuit court's conclusion that Hilliard failed to invoke his right to counsel.

The Court of Appeals, in determining this issue of law, necessarily had to review the words Hilliard spoke to determine whether they were legally sufficient to invoke his right to counsel.  That review of the words spoken by Hilliard also required consideration of the context in which his statements were made.

Likewise, appellate review of the legal sufficiency of words spoken by a defendant may include review of the tone of a defendant's voice, any voice inflections, and the defendant's

10

demeanor, if those factors are alleged to have affected the meaning of the words spoken.  However, the appellate court's review of such factors is limited to the issue whether the defendant's words, as spoken, were legally sufficient to invoke his right to counsel.  The appellate court is not permitted to use such factors to conduct its own fact finding and, to the extent that the appellate court does so, it commits error.

Here, the Court of Appeals cited, among other things, the tone of Hilliard's voice, his voice inflections, and his demeanor in concluding that the totality of the circumstances "support[s] the reasonable conclusion that Hilliard clearly requested the presence of counsel . . . ."  Hilliard, 43 Va. App. at 673, 601 S.E.2d at 659.  This conclusion exceeded the scope of the Court's duty to confine its review to the issue whether Hilliard's words, as spoken, were legally sufficient to invoke his right to counsel in light of the circuit court's finding that they were not.  However, we conclude that this error was harmless because the Court ultimately and properly considered the legal sufficiency of Hilliard's words, as demonstrated by the Court's holding that "Hilliard's [third set of] statements could only be understood by reasonable officers, under the circumstances at issue in this case, as an unambiguous assertion of his right to counsel."  Id. at 672, 601 S.E.2d at

658.  Therefore, we consider the Court of Appeals' holding by examining Hilliard's three alleged requests for an attorney.

We conclude that Hilliard's first and second alleged requests do not qualify as unequivocal assertions of his right to counsel.  In the first instance, as stated above, Hilliard asked, "Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?"  Detective White replied, "That's up to you," and told Hilliard that they could not continue their interview unless he signed the waiver form.  Hilliard signed the form and continued to speak to the detectives without a lawyer being present.

This first exchange, which occurred immediately after Hilliard was advised of his Miranda rights, was merely an inquiry requesting a clarification or affirmation of the rights that had just been explained to him.  See, e.g., Eaton, 240 Va. at 253-54, 397 S.E.2d at 395-96; Poyner v. Commonwealth, 229 Va. 401, 410, 329 S.E.2d 815, 823 (1985).  Hilliard continued to speak with the detectives instead of requesting the presence of counsel after being told that the decision was "up to [him]." Thus, we hold that Hilliard's first reference to the presence of an attorney was not an unambiguous request for counsel, and the detectives were not required to stop questioning him under the Edwards rule.  See Davis, 512 U.S. at 461-62; Edwards, 451 U.S. at 484-85; Redmond, 264 Va. at 330, 568 S.E.2d at 700.

Hilliard made his second alleged request a few minutes later in the interview. He stated that he "would like to have somebody else in here because I may say something I don't even know what I am saying, and it might . . . jam me up . . . ."

We examine this second statement with reference to our holding in Midkiff v. Commonwealth, 250 Va. 262, 462 S.E.2d 112 (1995). There, after having been advised of his Miranda rights, the defendant stated, "I'll be honest with you, I'm scared to say anything without talking to a lawyer." Id. at 265, 462 S.E.2d at 114. We concluded that although the defendant's statement expressed reservation about the wisdom of continuing the interrogation without the presence of counsel, the statement did not "clearly and unambiguously communicate a desire to invoke his right to counsel." Id. at 267, 462 S.E.2d at 115.

We conclude that Hilliard's statement was even more ambiguous than the statement in Midkiff because the defendant in that case mentioned "talking to a lawyer," while Hilliard merely stated that he would "like to have somebody else in here" to avoid making statements that might implicate him. Thus, guided by our holding in Midkiff, we conclude that Hilliard's second alleged request for an attorney was equivocal because it failed to communicate more than an uncertainty about the wisdom of continuing the interrogation without consulting another person.

13

See id.; Burket v. Commonwealth, 248 Va. 596, 610, 450 S.E.2d 124, 132 (1994).

Hilliard's third alleged request for an attorney occurred about one hour later in the interrogation. As recounted above, Hilliard asked, "Can I get a lawyer in here?" Detective White responded, "Do you want to do that?" Hilliard then stated, "I already have a lawyer. I mean, I can talk to you, don't get me wrong. But I just want to make sure I don't, like I said before, just jam myself up."

We consider this exchange in the context of the circumstances and the prior statements made by Hilliard. When viewed as a whole, the import of Hilliard's statements is clear. We hold that as a matter of law, Hilliard's third alleged request for an attorney, in context, was an unequivocal request for counsel stated with sufficient clarity that a reasonable police officer under the circumstances would have understood the statements to be a request for counsel.[*] Therefore, at that point, the detectives were required to cease interrogating Hilliard. See Davis, 512 U.S. at 458; Edwards, 451 U.S. at 484-85; Redmond, 264 Va. at 328, 568 S.E.2d at 698. Accordingly, we

hold that the Court of Appeals correctly concluded that the circuit court erred in denying Hilliard's motion to suppress, because Hilliard's confession was obtained in violation of his Fifth Amendment rights.

We also observe that the Commonwealth does not assign error to the Court of Appeals' determination that the circuit court erred in concluding that Hilliard's admission, "I was there," was a volunteered statement and, thus, was admissible irrespective whether he had invoked his right to counsel. The Court of Appeals held that Hilliard's statement confessing his presence at the scene of the crime was obtained as a result of express questioning by the police detectives. Hilliard, 43 Va. App. at 675, 601 S.E.2d at 660. In light of the Commonwealth's decision not to challenge this part of the Court of Appeals' holding, we do not further address the issue.

Finally, we do not consider Hilliard's assignment of cross-error that the police violated his Sixth Amendment right to counsel, because Hilliard failed to preserve this issue in the circuit court. Although Hilliard made an unsubstantiated reference to the Sixth Amendment in his written motion to

---

* Although Hilliard stated that he already had a lawyer, he did not have counsel appointed or retained on the charges for which he was being interviewed by the detectives. Thus, we do not consider that statement as a request for the presence of a particular attorney. However, as stated above, we consider that

15

suppress, he did not refer to that issue in his oral argument on the motion but solely addressed his Fifth Amendment claims. Thus, Hilliard did not ask the circuit court to rule on his Sixth Amendment claim, and we will not consider it for the first time on appeal.  See Rule 5:25.

For these reasons, we will affirm the Court of Appeals' judgment.

Affirmed.

JUSTICE AGEE, concurring in part and dissenting in part.

I join the majority in affirming that portion of the Court of Appeals judgment that (1) Hilliard failed to properly preserve his Sixth Amendment claim for appeal and (2) neither of Hilliard's first two purported requests for an attorney constituted a clear invocation of his right to counsel. However, I write separately because I disagree that Hilliard's third alleged request for an attorney "express[ed] an unequivocal request for counsel."

The right to counsel established in Miranda v. Arizona, 384 U.S. 436, 469-73 (1966), is "a . . . procedural safeguard [meant] . . . to insure that the right against self-incrimination was protected."  Davis v. United States, 512 U.S. 452, 457 (1994) (citing Michigan v. Tucker, 417 U.S. 433, 443-

statement together with Hilliard's other statements in holding that he unequivocally invoked his right to counsel.

16

444 (1974)).  In Edwards v. Arizona, 451 U.S. 477 (1981), the United States Supreme Court established an additional protection for suspects, holding that if, in the course of interrogation, a suspect affirmatively invokes his right to counsel, "questioning must cease."  Davis, 512 U.S. at 461.  However, "after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney."  Id.

In Davis, the United States Supreme Court addressed on the merits, the issue of "ambiguous or equivocal references to counsel during custodial interrogation."  Id. at 456.  The Court noted that a suspect has the burden to "unambiguously request counsel" because "the primary protection afforded suspects subject to custodial interrogation is the Miranda warnings themselves."  Id. at 459-60.  Thus, a law enforcement officer conducting a custodial interrogation meets his obligation under Miranda when he advises a suspect of his right to counsel.

> [I]f a suspect makes a reference to an attorney that
> is ambiguous or equivocal in that a reasonable officer
> in light of the circumstances would have understood
> only that the suspect might be invoking the right to
> counsel, our precedents do not require the cessation
> of questioning.

Id. at 459.  Because the officer's responsibility to discontinue interrogation is triggered by the suspect's assertion of his

17

<u>Miranda</u> right, that assertion must be "unambiguous."  <u>Id</u>. at

459.  In short,

> the police must respect a suspect's wishes regarding
> his right to have an attorney present during custodial
> interrogation, [b]ut when the officers conducting the
> questioning reasonably do not know whether or not the
> suspect wants a lawyer, a rule requiring the immediate
> cessation of questioning would transform the <u>Miranda</u>
> safeguards into wholly irrational obstacles to
> legitimate police investigative activity.

<u>Id</u>. at 460 (citation and internal quotation marks omitted).  The

<u>Davis</u> Court noted that, "if we were to require questioning to

cease if a suspect makes a statement that <u>might</u> be a request for

an attorney, . . . [p]olice officers would be forced to make

difficult judgment calls about whether the suspect in fact wants

a lawyer[,] . . . with the threat of suppression if they guess

wrong."  <u>Id</u>. at 461.

We applied <u>Davis</u> in <u>Commonwealth v. Redmond</u>, 264 Va. 321,

324, 328-30, 568 S.E.2d 695, 696, 698-99 (2002), where the

defendant moved to suppress a confession he made during a

custodial interrogation claiming that he had invoked his right

to counsel.  After the defendant was advised of his Miranda

rights, a police detective began interrogation.  At some point,

the defendant asked, "Can I speak to my lawyer?  I can't even

talk to lawyer before I make any kinds of comments or anything?"

<u>Id</u>. at 325, 568 S.E.2d at 697.  The detective responded,

> You can do anything you like . . . . You have the
> freedom to do anything you want. . . . to go to sleep

18

> right now if you want to do that. . . . You have the freedom to sit here and talk to me. . . . The point is . . . this is your opportunity [to give your side of the story]; this is your time. There ain't tomorrow, there ain't later. Okay? There's not later. There is no later. And I'm trying, I'm trying to give you . . . the opportunity to help yourself out a little bit.

Id. at 325-26, 568 S.E.2d at 697. The defendant never reasserted his request. Citing the holding of Davis, this Court determined that the defendant's statements in Redmond "were not a clear and unambiguous assertion of his right to counsel." Id. at 330, 568 S.E.2d at 700.

We noted in Redmond the Supreme Court's refusal in Davis "to adopt a rule requiring officers to ask clarifying questions" to determine if a suspect's statement is a request for counsel. Id. The Davis Court explained, however, that "[c]larifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one." Davis, 512 U.S. at 461.

In this case, the interrogating officer did follow up Hilliard's question, "Can I get a lawyer in here?" with a clarifying question: "Do you want to do that?" Rather than responding affirmatively, Hilliard continued,

> I already have a lawyer. I mean, I can talk to you, don't get me wrong. But I just want to make sure I don't, like I said before, just jam myself up. And I'll tell you everything that I know. This is my word.

19

The officer gave Hilliard the opportunity to clearly request an attorney, but Hilliard did not.

In my view, the majority's determination that Hilliard unequivocally requested counsel is inconsistent with this Court's holding in Redmond and at odds with the guidance from the United States Supreme Court in Davis. Taken in full context, Hilliard's question "Can I get a lawyer in here?" is no more an "unambiguous or unequivocal request for counsel" than Redmond's "Can I speak with my lawyer?" If anything, the defendant's comments in Redmond were a stronger indication of a possible request for counsel than Hilliard's general inquiry in this case.

Redmond, arguably, was asking for "my lawyer" while Hilliard was generically asking whether he had the right to speak to "a lawyer," a right previously and immediately thereafter explained to him. Further, the detective interrogating Redmond steered him away from his initial question and emphasized the importance of continuing with the interrogation, while the officer questioning Hilliard gave him an immediate opportunity to make his request clear. The suppression of Hilliard's admission does not comport with our decision to affirm the admissibility of Redmond's confession.

Judge Clements' dissenting opinion in the Court of Appeals succinctly states the deficiency in concluding that Hilliard's

20

third alleged request for an attorney was unequivocal under Davis or Redmond.

> [The third alleged request] is no less equivocal than his first two purported requests for counsel or the defendant's question in Redmond. . . . At best, a[n] . . . officer . . . would have understood only that Hilliard might be invoking the right to counsel. Likewise, Hilliard's statements and actions in response to the detective's follow-up clarifying question. . . were equivocal.  Instead of directly answering the detective's question in the affirmative, Hilliard again merely expressed his reservation about the wisdom of continuing the interrogation without consulting a lawyer and continued talking to the detectives in a manner that did not clearly and unambiguously communicate a desire to invoke his right to counsel. . . . [B]ecause the likelihood that a suspect would wish counsel to be present is not the test for applicability of the rule requiring cessation of the interrogation if the suspect requests counsel, Hilliard's reference to a lawyer, like those of the defendants in Davis and Redmond, fell short of requesting counsel in a clear and unambiguous manner.

Hilliard v. Commonwealth, 43 Va. App. 659, 686-87, 601 S.E.2d 652, 665-66 (2004) (Clements, J., concurring and dissenting).

The Davis court clearly stated the basis for the rule that a request for counsel be unambiguous and unequivocal because it provides

> a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information.  But if we were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, this clarity and ease of application would be lost.

Davis, 512 U.S. at 461.

By permitting Hilliard's equivocal request to stand as the basis for sustaining his motion to suppress, I believe the majority's opinion will obscure a "bright line" for future cases and foster the ambiguity Davis sought to constrain. Accordingly, I respectfully dissent and would reverse that part of the judgment of the Court of Appeals holding that the trial court erred in denying Hilliard's motion to suppress.