COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Frank and Millette
Argued at Alexandria, Virginia


CHRISTOPHER J. MARTIN

MEMORANDUM OPINION[*] BY
v.        Record No. 0035-07-4            JUDGE LeROY F. MILLETTE, JR.
APRIL 22, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Donald M. Haddock, Judge

Megan Thomas, Senior Assistant Public Defender, for appellant.

Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Christopher J. Martin (Martin) was convicted in a jury trial of first-degree murder in

violation of Code § 18.2-32, use of a firearm to commit murder in violation of Code § 18.2-53.1,

attempted robbery in violation of Code §§ 18.2-26 and 18.2-58, and use of a firearm to commit

attempted robbery in violation of Code § 18.2-53.1. On appeal, Martin argues the trial court

erred in denying his motion to suppress statements made during custodial interrogation. For the

reasons stated, we affirm the trial court.

I. BACKGROUND

Mustafa Aburanat (Aburanat), a cab driver employed by Paramount Cab in Prince

George's County, Maryland, picked up Martin and Jakita Jackson (Jackson) at the Suitland

Metro station in Prince George's County, Maryland late in the evening of March 20, 2006. After

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Aburanat dropped Jackson off at her home at approximately 11:20 p.m., Martin remained in the cab with him.

Aburanat parked his cab in Maryland and switched to his personal car, which he customarily drove home to Manassas, Virginia at the end of his shift. At around 3:00 a.m. on March 21, 2006, Aburanat was discovered dead in his personal car, which was parked with its engine running in front of an apartment complex in Alexandria, Virginia. The cause of Aburanat's death was a gunshot wound to his head. During the police investigation, the gun used to kill Aburanat was discovered in a lockbox located in a closet belonging to Martin's girlfriend, along with a receipt showing that Martin had purchased the gun prior to the murder. Martin was arrested and indicted for murder, use of a firearm to commit murder, robbery, and use of a firearm to commit robbery.[1]

Martin made a pretrial motion to suppress statements he made during an interview with the Alexandria Police Department. The trial court heard argument on Martin's pretrial motion to suppress.[2] The Commonwealth called Detective Thomas Durkin (Durkin) as its sole witness. Durkin testified that he had been a police detective in the City of Alexandria since 1983. During his tenure as a detective with the Alexandria Police Department, Durkin had conducted hundreds of custodial interviews and had advised suspects of their Miranda[3] rights hundreds of times. On May 9, 2006, Durkin interviewed Martin at the Alexandria detective bureau. Durkin asked Martin if he had ever been advised of his rights, to which Martin answered "once or twice." Durkin then advised Martin of his Miranda rights using a pre-printed rights waiver form. The

---

[1] The court granted Martin's motion to strike the robbery charge.

[2] The Honorable Lisa B. Kemler presided over the hearing on the motion to suppress. The Honorable Donald M. Haddock presided over Martin's full trial.

[3] Miranda v. Arizona, 384 U.S. 436, 469-73 (1966).

interview was video and audio recorded and transcribed.[4] The rights waiver portion of the

interview proceeded, in pertinent part, as follows:

> [Durkin]: Before questioning begins, it is required that you be advised of your rights under the law, and that you understand these rights. The first right is, you have the right to remain silent, do you understand that?
>
> [Martin]: Yes.
>
> [Durkin] Anything you say can be used against you in court, you understand that?
>
> [Martin]: Yes.
>
> [Durkin]: You have the right to talk to a lawyer before we ask you any questions and to have a lawyer with you during questioning, do you understand that?
>
> [Martin]: Yes, I need a lawyer if . . .
>
> [Durkin]: If you cannot afford a lawyer and want one, one will be provided for you by the court, do you understand that?
>
> [Martin]: Yes.
>
> [Durkin]: If you decide to answer questions now without a lawyer present you still have the right to stop answering questions at any time, do you understand that?
>
> [Martin]: Yes.

Durkin testified he did not understand Martin's statement "Yes, I need a lawyer if . . ." to

be a request by Martin for counsel. Durkin was not sure what Martin had said and continued

reading Martin his rights. Durkin then asked Martin to read the waiver of rights section at the

bottom of the form, which states, "I have read this statement of my rights and I understand what

my rights are. I am willing to make a statement and answer questions. No threats, promises, or

---

[4] The rights waiver form and transcript were admitted into evidence at the hearing on the motion to suppress. Durkin testified he reviewed the transcript and confirmed its accuracy.

offers of reward have been made to me." Martin read the waiver of rights out loud and signed the form in Durkin's presence.

Durkin began asking Martin questions surrounding the homicide case. Martin identified himself in a picture taken by a surveillance camera in the Suitland Metro station and stated he was with the woman who appeared next to him in the picture.[5] When Durkin said, "Let's tape record this," Martin responded, "Can I get a lawyer?" Durkin then stated, "You want a lawyer? . . . I mean, we can get you, if you want a lawyer we can, you have to say you want a lawyer. You want a lawyer?" Martin replied, "Yes," at which point Durkin terminated the interview. The trial court denied Martin's motion to suppress the statements made to Durkin, ruling that:

> [I]t seems clear to me after both reviewing the transcript and watching the video and audio taping that the Defendant's statement that occurred during the time that Detective D[u]rkin was going through the Rights Waiver Form with the Defendant was not an unambiguous or unequivocal invocation of his right to counsel. I think that under the case law, while it is clearly a difficult thing for an accused to show that he made an unambiguous and unequivocal invocation of his right to counsel, I don't think this is even a close case on that . . . . I don't think that the detective did anything other than what he was required to do . . . . When the detective starts to actually question him, he then clearly asks for a lawyer. So the motion to suppress the Defendant's statements will be denied.

This appeal followed.

## II. ANALYSIS

On appeal from a trial court's denial of a motion to suppress, the appellant bears the burden to show the trial court's ruling constituted reversible error. Rashad v. Commonwealth, 50 Va. App. 528, 533, 651 S.E.2d 407, 410 (2007). We view the evidence in the light most

---

[5] The woman depicted, Jackson, was located and testified during the prosecution's case in chief. She identified herself and Martin in the same surveillance picture taken at the Suitland Metro station.

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  Id. at 533-34, 651 S.E.2d at 410.

Appellate review of the denial of a motion to suppress involves mixed questions of law and fact.  Commonwealth v. Redmond, 264 Va. 321, 326, 568 S.E.2d 695, 697 (2002).  The trial court's findings of historical fact are reviewed only for "clear error," and we give due weight to inferences drawn from those factual findings.  See Ornelas v. United States, 517 U.S. 690, 699 (1996); Redmond, 264 Va. at 327, 568 S.E.2d at 698; Rashad, 50 Va. App. at 534, 651 S.E.2d at 410.  However, we review *de novo* the trial court's application of defined legal standards to the particular facts of a case.  Rashad, 50 Va. App. at 534, 651 S.E.2d at 410.

> Thus, in applying independent appellate review of the mixed question of law and fact whether a defendant clearly requested an attorney during a custodial interrogation, "the determination of what [the defendant] actually said is a question of fact that we review only for clear error. . . . Whether those words are sufficient to invoke the right to counsel is a legal determination that we review de novo."

Redmond, 264 Va. at 327, 568 S.E.2d at 698 (quoting United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993)).

A criminal suspect's right to have an attorney present during custodial interrogation was established by the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 469-73 (1966).  If the suspect waives his right to counsel after being informed of it, then police may begin questioning him.  Davis v. United States, 512 U.S. 452, 458 (1994).

Once an accused has asserted his desire to have counsel present during his dealings with police, interrogation must cease until counsel has been made available to him or the accused initiates further communication with the police.  Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).  The Edwards rule that questioning must cease if the suspect asks for a lawyer requires courts to determine whether the suspect actually invoked his right to counsel.  Davis, 512 U.S. at

458. "To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry." Id. at 458-59; Medley v. Commonwealth, 44 Va. App. 19, 31, 602 S.E.2d 411, 417 (2004) (*en banc*); McDaniel v. Commonwealth, 30 Va. App. 602, 605, 518 S.E.2d 851, 853 (1999) (*en banc*). The suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459; Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005); Redmond, 264 Va. at 328-29, 568 S.E.2d at 699. If the suspect's statement is not an unambiguous or unequivocal request for counsel, a police officer has no obligation to stop questioning him. Davis, 512 U.S. at 461-62; Redmond, 264 Va. at 330, 568 S.E.2d at 700.

The parties do not dispute the content of Martin's statement to Durkin, "Yes, I need a lawyer if . . . [.]" Therefore, our consideration on appeal is restricted to a *de novo* review of whether Martin's words, taken in context, were sufficient to invoke his right to counsel. Hilliard, 270 Va. at 50, 613 S.E.2d at 584.

The Supreme Court of Virginia has held the following statements were *not* clear and unambiguous invocations of a suspect's right to counsel: "I'm scared to say anything without talking to a lawyer," Midkiff v. Commonwealth, 250 Va. 262, 265, 462 S.E.2d 112, 114 (1995); "Do you think I need an attorney here?," Mueller v. Commonwealth, 244 Va. 386, 396, 422 S.E.2d 380, 384 (1992); and "You did say I could have an attorney if I wanted one?," Eaton v. Commonwealth, 240 Va. 236, 254, 397 S.E.2d 385, 393 (1990). More recently, in Hilliard, the Supreme Court held that the defendant's statements "Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?" and "like I said, I would like to have somebody else in here because I may say something I don't even know what I am saying, and it might f[] me up, might jam me up in some incidents, and I don't want that to happen, man," were

- 6 -

insufficient to invoke his right to counsel. Hilliard, 270 Va. at 46-53, 613 S.E.2d at 582-86. The Court found that these statements merely requested a clarification or affirmation of the rights that had been explained to the defendant and expressed his reservation about the wisdom of continuing interrogation without counsel present. Id. at 51-52, 613 S.E.2d at 585-86. The defendant in Hilliard did not make an unequivocal request for counsel until he stated, "Can I get a lawyer in here?" Id. at 52, 613 S.E.2d at 586.

Applying this clear and unambiguous standard, we hold that Martin's statement "Yes, I need a lawyer if . . ." is not legally sufficient to invoke his right to counsel. Similar to the defendant in Hilliard, Martin did not articulate his desire to have counsel present clearly enough that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. The context in which Martin's statement was made shows he was responding to Durkin's statement, "You have the right to talk to a lawyer before we ask you any questions and to have a lawyer with you during questioning, do you understand that?" When reviewed *de novo*, we interpret Martin's statement to be a request for clarification or an affirmative response to the question of whether he understood his right to counsel and the beginning of an attempt to state his understanding. Additionally, Martin's use of the word "if" made his statement conditional.[6] In contrast, when Martin later asked, "Can I get a lawyer?," he clearly and unambiguously communicated his desire to invoke his right to counsel and Durkin immediately terminated his interview.

### III. CONCLUSION

In sum, Martin's statement, "Yes, I need a lawyer if . . .," did not constitute an unequivocal request for counsel stated with sufficient clarity that a reasonable police officer

---

[6] In the context of Martin's statement, the word "if" means "in the event that," "granting that," or "on condition that." The American Heritage Dictionary of the English Language 654 (New College ed. 1982).

under the circumstances would have understood the statement to be a request for counsel.  The

trial court did not err in denying Martin's motion to suppress.

Affirmed.