COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Alston
Argued at Richmond, Virginia


MICHAEL FITZROY CROSBY

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0847-08-2                  JUDGE ROSSIE D. ALSTON, JR.
                                                     NOVEMBER 17, 2009
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Clarence N. Jenkins, Jr., Judge

         Catherine French, Assistant Public Defender (Office of the Public
         Defender, on briefs), for appellant.

         Josephine F. Whalen, Assistant Attorney General II (William C.
         Mims, Attorney General, on brief), for appellee.


       Michael Fitzroy Crosby (appellant) appeals his jury trial conviction for carnal knowledge of

a child between thirteen and fifteen years of age, in violation of Code § 18.2-63.[1]  On appeal,

appellant contends that the trial court erred in denying appellant's motion to suppress his

post-Miranda statements.  In support of this assertion, appellant argues that the post-Miranda

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 18.2-63 provides

         A. If any person carnally knows, without the use of force, a child
         thirteen years of age or older but under fifteen years of age, such
         person shall be guilty of a Class 4 felony.

                  *       *       *       *       *       *       *

         C. For the purposes of this section, (i) a child under the age of
         thirteen years shall not be considered a consenting child and
         (ii) "carnal knowledge" includes the acts of sexual intercourse,
         cunnilingus, fellatio, anilingus, anal intercourse, and animate and
         inanimate object sexual penetration.

interrogation was conducted in violation of <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004).  For the following reasons, we affirm the trial court.

## I.  BACKGROUND

In July 2007, appellant spoke with K.B., a thirteen-year-old girl, in an adult internet chatroom.  At the time, appellant was thirty-one years old.  They interacted frequently on the internet and also met in person.  K.B. considered their relationship as that of a "boyfriend and girlfriend."  At various times, K.B. told appellant that she was twenty years old or that she was sixteen years old and that she was a mother.  However, during the months of July and August 2007, after discovering the relationship between appellant and K.B., K.B.'s mother spoke with appellant several times on the telephone, informed him that K.B. was thirteen years old, and told him to cease communicating with K.B.  K.B's mother also specifically prohibited appellant from coming to the family residence.  Additionally, sometime in the middle of August, appellant and K.B. discussed the fact that she was actually thirteen years old.

On August 24, 2007, police officers were called to K.B.'s home by an unidentified female family member, who believed there was a trespasser in the home.  Officers Godwin, McQueen, and Land of the City of Richmond Police Department responded to the call.  K.B.'s mother gave the officers permission to search the home, and Officer Godwin found appellant and K.B. asleep in K.B.'s bed.  Appellant was not wearing any clothes.  Officer Godwin woke appellant and told him to put on his clothes.  When appellant was clothed, Officer Godwin placed him in handcuffs, and informed appellant that he was under investigative detention for trespassing, rather than under arrest.

Officer Godwin escorted appellant out of the residence leaving him under the supervision of Officer Land.  Officers Godwin and McQueen re-entered K.B.'s home, where they spoke with the

relative who initially called the police. She told Officer Godwin that she believed appellant and K.B. had a sexual relationship and informed Officer Godwin that K.B was thirteen years old.

While Officer Land waited outside with appellant, Officer Land asked "what was going on," and spoke casually with appellant. Unprompted, appellant told Officer Land that he did not know K.B. was underage and that he believed she was sixteen years old. Appellant stated that he was eighteen years old and that he had engaged in sexual intercourse with K.B.

In his next contact with Officer Godwin, appellant asked Officer Godwin why he was in handcuffs. In turn, Officer Godwin asked appellant why he was in K.B.'s house, as K.B.'s family members contended he was trespassing. Appellant responded that K.B. was his friend. Next, Officer Godwin informed appellant that K.B.'s family told him that appellant was in a sexual relationship with K.B. and that K.B. was thirteen years old. Officer Godwin further stated that K.B.'s family informed him that they forbade appellant from coming to their home. Appellant denied the veracity of the allegations. In response to Officer's Godwin's statements and some follow-up questions posed by Officer Godwin, appellant stated that he thought K.B. was sixteen years old and denied knowing that K.B. was thirteen years old. Appellant admitted that he was in an intimate relationship with K.B.

After this discussion, Officer Godwin left appellant in front of K.B.'s residence for a brief period of time. When he returned, he informed appellant of his rights and the consequences of waiving those rights, as required by Miranda v. Arizona, 384 U.S. 436 (1966). Appellant, who had previous involvement with law enforcement, received his G.E.D., and completed two years of college, stated that he understood his rights, and asked Officer Godwin if "he had the right to be heard." Appellant stated he wanted to tell "his side of the story." Appellant then provided an oral narrative statement, with Officer Godwin asking occasional questions. Several times, Officer Godwin stated the allegations made by K.B.'s mother and K.B., and asked appellant if they were

true or false. Appellant stated he engaged in unprotected sex with K.B. at least six times and that he had been aware, for at least two weeks, that K.B. was thirteen years old. During the interaction, Officer Godwin used a mild tone, and did not threaten appellant. Appellant provided his statement in less than fifteen minutes, while he and Officer Godwin were standing near the sidewalk outside K.B.'s residence. Appellant was charged with carnal knowledge of a child between thirteen and fifteen years of age, in violation of Code § 18.2-63. The record suggests that approximately sixty-five minutes passed from the time the officers arrived on the scene to the point of appellant's arrest.

Appellant, through counsel, moved to suppress all of the statements made on August 24, 2007. At the suppression hearing, appellant argued that when he was escorted from the house, he was under arrest for trespassing and that all of the questions posed to appellant prior to the administration of the Miranda warnings were inculpatory in nature. Appellant further argued that the statement given by appellant after the Miranda warnings was inadmissible, because "Miranda warnings . . . inserted in the midst of coordinated and continuous interrogation . . . are likely to mislead and deprive a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." Seibert, 542 U.S. at 613-14 (internal quotation omitted).

After hearing evidence and argument, the trial court ruled the statements elicited prior to the Miranda warnings were inadmissible, but that those statements elicited subsequent to the Miranda warnings were admissible and did not violate the protections enumerated in Seibert. The trial court found that the initial questions posed by the officers were not coercive and that the officers did not use "trickery or threats or promises or any type of ploy" to elicit responses. However, according to the trial court, at some point during the officer's pre-Miranda discussion with appellant, the officers' questioning evolved into an interrogation, as Officer Godwin asked questions that allowed a

reasonable person to think that Officer Godwin was eliciting an incriminating statement. Thus, the trial court suppressed the pre-Miranda warning statements.

The trial court went on to find that the administration of Miranda warnings cured the condition that rendered the unwarned statements inadmissible. The trial court held that an analysis under Seibert was not appropriate, as Seibert pertained to the use of trickery to obtain confessions, and the court had already found that the officers did not intentionally try to trick appellant into confessing. Further, the trial court held that appellant clearly wanted to give a statement and tell his "side of the story." Based on these conclusions, the trial court deemed the confession given after the Miranda warnings admissible.

A jury subsequently found appellant guilty of the offense of carnal knowledge of a child between thirteen and fifteen years of age. Appellant timely noted his appeal of the denial of his motion to suppress his post-Miranda statements.

## II. ANALYSIS

On appeal, it is appellant's burden to show the denial of his suppression motion constituted reversible error. Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008). The reviewing court is bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them, and "must give deference to the inferences that may be drawn from those factual findings." Commonwealth v. Hillard, 270 Va. 42, 49-50, 613 S.E.2d 579, 584 (2005). The trial court's determination that the provision of Miranda warnings cured constitutional violations raised by the earlier police interrogation is a legal determination, subject to *de novo* review by this Court. See, e.g., Harris v. Commonwealth, 27 Va. App. 554, 561, 500 S.E.2d 257, 260 (1998); Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996).

> [A]bsent deliberately coercive or improper tactics in obtaining the
> initial statement, the mere fact that a suspect has made an

> unwarned admission does not warrant a presumption of compulsion. A subsequent administration of <u>Miranda</u> warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

<u>Oregon v. Elstad</u>, 470 U.S. 298, 314 (1985). For, "[o]nce warned, the suspect is free to exercise his own volition in deciding whether or not to make a statement to the authorities." <u>Id.</u> at 308. "The relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements." <u>Id.</u> at 318.

Given the record before us, the trial court's factual determination that the officers did not deliberately use improper tactics or coercion is not plainly wrong or without the evidence to support it. <u>See</u> <u>Hillard</u>, 270 Va. at 49-50, 613 S.E.2d at 584. Officer Land, who was not privy to the conversations that occurred within the residence, casually asked appellant why he was being detained. Officer Godwin initially investigated the trespassing charge by asking appellant why he was present in the home, and then explained to appellant the allegations of sexual misconduct that required further investigation by the officers and mandated appellant's further detention. There was no evidence in the record that the officers attempted to elicit a response from appellant by the use of trickery or coercion.

Provided this factual predicate, this Court must now determine if appellant voluntarily made his post-<u>Miranda</u> statements. <u>Elstad</u>, 470 U.S. at 314.[2] Assessing whether a confession is

---

[2] Appellant urges this Court to utilize the five-factor test articulated in the <u>Seibert</u> plurality opinion in our determination of whether appellant's post-<u>Miranda</u> statements are admissible. <u>See</u> <u>Seibert</u>, 542 U.S. at 615 (plurality opinion). We decline to do so. The applicable jurisprudence requires this Court to consider <u>Seibert</u> on its most narrow ground. As

voluntary requires an examination of the totality of the circumstances to determine if the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); Gray v. Commonwealth, 233 Va. 313, 324, 356 S.E.2d 157, 163 (1987).

Appellant told the officer that he understood the warnings, which he concedes were accurate and complete. These facts, in conjunction with appellant's eagerness to "tell his side of the story" support the conclusion that appellant's confession was not coerced. Further, it is noted that although the officers were in uniform, they did not draw their weapons, nor did they speak to appellant in anything other than a conversational tone. See Gray, 233 Va. at 324, 356 S.E.2d at 163.

Justice Kennedy concurred in the result of the plurality on a more narrow ground, his concurring opinion constitutes the controlling legal principle; the five-factor test articulated in the plurality is inapposite. United States v. Street, 472 F.3d 1298, 1313 (11th Cir. 2006) (citing United States v. Gonzalez-Lauzan, 437 F.3d 1128, 1136 n.6 (11th Cir. 2006); Romano v. Oklahoma, 512 U.S. 1, 9 (1994); Marks v. United States, 430 U.S. 188, 193 (1977)). See also Panetti v. Quarterman, 551 U.S. 930, 949 (2007) (noting "[w]hen there is no majority opinion, the narrower holding controls"); United States v. Mashburn, 406 F.3d 303, 309 (4th Cir. 2005) (holding Justice Kennedy's opinion concurred in the judgment on the narrowest grounds and is controlling; thus the "admissibility of post-warning statements is governed by Elstad unless the deliberate 'question-first' strategy is employed"). Accordingly, we are guided by Justice Kennedy's concurring opinion, and Elstad controls:

> The admissibility of postwarning statements should continue to be governed by the principles of Elstad unless the deliberate two-step strategy [of asking pre-Miranda questions in an effort to elicit those same statements post-Miranda] was employed. If th[is] deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made. Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the Miranda warning and of the Miranda waiver.

Seibert, 542 U.S. at 622 (Kennedy, J., concurring).

Moreover, the totality of the circumstances further shows that appellant's confession was made knowingly and intelligently.  Elstad, 470 U.S. at 309.  Appellant had numerous previous convictions for felony offenses, and was thus familiar with the criminal justice system and the rights accorded to him.  Further, he was thirty-one years old, had received his G.E.D., and completed two years of college.  The totality of these circumstances justifies the trial court's determination.  See Gray, 233 Va. at 325, 356 S.E.2d at 163 (where Gray, who was twenty-eight years old, had a G.E.D., could read and write, said he understood his rights and had prior experience in the criminal justice system, resulted in a determination that the totality of circumstances showed Gray knowingly waived his Fifth Amendment rights).

Accordingly, we find that the trial court properly denied appellant's motion to suppress, as the post-Miranda statements were knowingly and voluntarily made.

### III.  CONCLUSION

For the reasons stated, we find no error in the judgment of the trial court.  Therefore we affirm the trial court's decision.

Affirmed.