COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and Malveaux
Argued at Richmond, Virginia

**PUBLISHED**

KELLY DANIEL BASS

v.        Record No. 0769-18-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RANDOLPH A. BEALES
JULY 9, 2019

FROM THE CIRCUIT COURT OF CUMBERLAND COUNTY
Donald C. Blessing, Judge

Jason Moore for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R. Herring, Attorney General, on brief), for appellee.

Appellant Kelly Daniel Bass was convicted of object sexual penetration under Code § 18.2-67.2(A)(1), forcible sodomy under Code § 18.2-67.1(A)(1), aggravated sexual battery under Code § 18.2-67.3(A)(1), and indecent liberties with a child under Code § 18.2-370(A)(4). On appeal, Bass contends that the trial court erred in denying his post-trial motion to dismiss "based on a violation of his speedy trial rights"; failing to "delineate [its] ruling as to dates and specific reasons for its findings regarding the speedy trial issues"; denying his post-trial motion for a retrial "based on the malfunctioning telephone connecting appellant and counsel" during the child's closed-circuit television testimony; and denying his motion to suppress his confession.

## I. BACKGROUND

Procedural History and Facts Relevant to Speedy Trial

After waiving a preliminary hearing, on September 27, 2016, Bass was indicted for object sexual penetration, two counts of forcible sodomy, aggravated sexual battery, indecent liberties

with a child, and production of child pornography, each involving Bass's eight-year-old cousin, D.B.[1] Bass was held in continuous custody from the date of the indictment until his trial on July 11, 2017.

On the same day that the indictments were returned, Bass appeared in the Circuit Court of Cumberland County to set a trial date. The Commonwealth's Attorney informed the trial court that she and Bass's trial counsel, Roger Stough, had "agreed on a trial date of December 12, 2016." The trial court entered an order which stated that Bass's case would be "continued to December 12, 2016" and that the continuance was on Bass's motion.[2]

On November 1, 2016, the parties appeared before the trial court on the Commonwealth's motion for D.B. to testify at trial via closed-circuit television. The trial court granted the motion after Bass, both individually and through his counsel, represented to the trial court that he did not object to D.B. testifying in this manner.

On December 1, 2016, Stough, on Bass's behalf, moved for a continuance of the December 12, 2016 trial date because Bass had been admitted to Central State Hospital. Bass's motion to continue was heard on December 12, 2016. The trial court granted the motion and entered an order continuing the case until January 24, 2017, for the case "to be set" for trial.

On January 24, 2017, Bass's counsel represented to the trial court that the hospital had extended Bass's 30-day hold to up to 60 days. As a result of Bass's continued stay at the

---

[1] We use initials, instead of the child's name, in an attempt to better protect her privacy.

[2] The September 27, 2016 written order was a form order that states, "It is ordered that this matter be continued to _____ at _____ a.m./p.m." The clerk wrote the date of December 12, 2016, and the time of the hearing (9:30 a.m.) in the empty blanks. The clerk also checked a box below this statement indicating that the case would be continued "for a bench trial" and, below that, checked another box indicating that the matter had been continued on the defendant's motion. It is undisputed, however, that September 27, 2016, was the date when the parties appeared to first set the case for trial, and the record shows that there had been no trial date set and no continuances of the trial date at the time of this September 27, 2016 order.

hospital, Bass's counsel asked "for March 21st to be an evaluation date to see whether we can set a trial date." At the conclusion of the hearing, the trial court entered an order stating that the matter would be continued to March 21, 2017, "for a bench trial." The order also reflects that the continuance was made on Bass's motion.

The parties appeared before the trial court again on the scheduled March 21, 2017 date, where Stough informed the trial court that Bass had been released from Central State Hospital and that he no longer consented to the victim testifying by closed-circuit television. In addition, Stough told the trial judge that Bass "now wants to object to a continuance to get his right to a speedy trial started." Stough stated, "[Bass] has agreed to continuances in the past, he wants to object to that continuance today." With the agreement of the parties, the trial court set a date to hear motions, including Bass's motion to vacate the order allowing D.B. to testify by close-circuit television, for April 10, 2017. The trial court also set trial for July 11, 2017, after counsel for both parties confirmed their availability for that date. Stough told the trial court, "I'm good with that day." However, he also stated, "Judge, on any order that is entered I need to object to the continuance just to get my client's rights to a speedy trial started." The March 21, 2017 written order continuing the trial to July 11, 2017, reflects that Bass objected to the continuance and that he was not waiving his right to speedy trial.

At the April 10, 2017 hearing on motions, Stough argued Bass's motion to vacate the order permitting the victim to testify by closed-circuit television, which the trial court denied. Stough notified the trial court that he intended to file additional motions, and the trial court set another motions date for May 23, 2017. At the conclusion of the April 10, 2017 hearing, Stough informed the trial judge that the order needed to reflect that he objected to the continuance based on speedy trial and that he did not want Bass "agreeing to a continuance order and potentially

waiving a right to speedy trial."[3]  That prompted the trial judge to ask Stough, "But you agreed to the trial date?" and Stough responded, "I agreed to the trial date, but that is within the speedy trial timeframe."  The trial judge then said, "I understand.  So if we have to push the trial out we can deal with it on whatever date."  The written order contains a notation by the trial judge indicating that Bass objected to the continuance "to preserve speedy trial rights."

Motion to Suppress

During a custodial interview with Deputy Sheriff Dennis Ownby of the Cumberland County Sheriff's Office on March 18, 2016, after being read his <u>Miranda</u> rights, Bass confessed to sexually molesting D.B.

On May 1, 2017, Bass moved to suppress this confession, arguing that he had made an unequivocal request for an attorney during the interview.  The trial court heard the motion on May 23, 2017.  The trial judge listened to an audio recording of the confession which was entered into evidence and made part of the record on appeal.

At the hearing on the motion, Stough argued that approximately eight and one-half minutes into the interview, Bass made an unequivocal request for counsel when he said, "Is there any way uh I could have um like a an attorney or something present or a lawyer or something and um maybe a like a mental health professional?"[4]  On the audiotape, Detective Ownby responded to Bass, stating, "I don't have them here, if you want an attorney here, that's fine but I can already tell you they're going to tell you don't tell anything, but that's up to you.  It's up to you."  A few moments later, Bass asked, "How should I start?"  Then, approximately twelve and

---

[3] The order "continued" the case for the additional motions to be heard on May 23, 2017.  It made no change to the July 11, 2017 trial date.

[4] According to well-established principles of appellate review, we view the facts, including the audio recording, presented at the motion to suppress in the light most favorable to the Commonwealth because it prevailed on the motion to suppress in the trial court.  <u>See</u> <u>Beasley v. Commonwealth</u>, 60 Va. App. 381, 389 (2012).

one-half minutes into the interview, Bass stated, "What difference would it make if I um waited for like a lawyer and like a mental health professional?" and Ownby responded that he was not required to get Bass a mental health professional. He also stated, "If you want a lawyer, we can get you a lawyer but I can already tell you that they won't let you tell us what happened . . . . But it's up to you, I'm not going to deny you your rights." Bass then proceeded to make incriminating statements amounting to a confession of the indicted charges.

At the hearing, Stough indicated that he was only relying on Bass's first statement as a basis for his motion to suppress. After listening to the audio recording of the interview, the trial court denied the motion to suppress, finding that Bass's words were "ambiguous questions about wanting a lawyer."

### D.B.'s Testimony By Closed-Circuit Television

At appellant's bench trial on July 11, 2017, D.B. testified by closed-circuit television in accordance with the trial court's prior ruling. Before she began her testimony, Stough informed the trial court that he had been told by a state police officer, who was running the closed-circuit system, that if Bass were to call Stough during the testimony, the whole courtroom would be able to hear their conversation. To address the problem, Stough proposed that if Bass needed to speak with him, Bass should raise his hand to get the trial judge's attention and then Stough could leave the witness room and meet with Bass. The trial judge explained the situation to Bass directly, informing him of the importance of his being able to speak with his counsel and explaining that the current configuration of the phone system would prevent those conversations from being confidential. Therefore, the trial judge proposed that, if Bass wanted to speak with Stough during D.B.'s testimony, he should "simply pick up [the] phone and say I need to speak to you" and then they could meet. Stough agreed with this plan, noting that it "sounds great." D.B.'s testimony proceeded in accordance with this plan.

At the conclusion of the bench trial, the court found Bass guilty of forcible sodomy, object sexual penetration, aggravated sexual battery, and indecent liberties with a minor,[5] and entered its sentencing order on January 11, 2018.

Post-Trial Motions

On January 26, 2018, the trial court took up various post-trial *pro se* motions filed by Bass, including a motion dealing with an allegation of ineffective assistance of counsel. Stough also moved that he be permitted to withdraw as counsel and that the sentencing order be suspended to allow new counsel to review the case. The trial court granted both motions, removing Stough as counsel and suspending the sentencing order until April 2, 2018.

On April 11, 2018, Jason Moore, who was appointed to replace Stough as Bass's counsel, proceeded with two motions on Bass's behalf – a motion for retrial based on the victim's closed circuit testimony because "the video conferencing phone between Mr. Stough and Mr. Bass failed to operate" and a motion alleging Bass's constitutional and statutory speedy trial rights had been violated. On the first motion, Moore argued that the malfunctioning system denied him a "contemporaneous and private conduit allowed between Counsel and the Defendant while Counsel is in the testimony room," which Moore argued was required by Code § 18.2-67.9. The trial judge denied the motion, concluding that the communication method between Stough and Bass satisfied the contemporaneous requirement and finding that Stough did not object and "by his conduct and suggestions, acceded, joined in."

After hearing some argument from counsel for both parties on Bass's speedy trial motion, the trial judge requested that the attorneys review and prepare their own calculations and reconvene on April 24, 2018. On April 23, 2018, the trial court entered an additional order

---

[5] At trial, Bass prevailed on a motion to strike one count of forcible sodomy. The Commonwealth did not pursue the pornography charge.

further suspending the imposition of Bass's sentence until it "ruled on and entered an Order [on the speedy trial motion] or April 27, 2018, whichever occurs first in time."

When the parties appeared again before the trial court on April 24, 2018, the attorneys argued their positions on the speedy trial matter. After hearing argument, the trial court found that Bass's speedy trial rights were not violated. In his ruling, the trial judge noted that he had reviewed the law and found that under the "speedy trial statute" a defendant's failure to make a claim for a speedy trial violation until after judgment would result in a waiver. He found that in Bass's case, Bass failed to make a written motion regarding speedy trial on or before the trial date, resulting in a waiver. In addition, the trial judge stated that he found that the Commonwealth's "timeline and argument is more persuasive" and that, with respect to any constitutional violation, Bass had suffered "no prejudice in this case."

Following the trial court's oral ruling from the bench, Moore requested clarification as to whether the trial court was counting September 27, 2016 to December 12, 2016 against Bass in the speedy trial calculation. The trial judge did not specify whether or not he was counting this time against Bass. Moore continued to object, "asking for a specific ruling on the time periods." However, the trial court declined to further expound upon its ruling.

On April 24, 2018, the trial court entered an order denying Bass's motion to dismiss the charges for lack of a speedy trial and lifted the suspension of the sentencing order. This appeal followed.

## II. ANALYSIS

### Speedy Trial

Bass contends that the trial court erred when it failed to grant his post-trial motion to dismiss the indictments based on a violation of his constitutional and statutory right to a speedy trial. Bass asserts that the time between September 27, 2016 and December 12, 2016, and again

between March 21, 2017 and July 11, 2017, should be attributed to the Commonwealth and that

the only timeframe in which the statute was tolled was between December 12, 2016 and March

21, 2017, when Bass sought continuances due to his admission into Central State Hospital.

According to Bass's argument, he was tried well outside the five-month statutory requirement set

out in Code § 19.2-243. The Commonwealth makes several arguments in response to Bass's

contention, including that the trial court did not err in denying Bass's post-trial motion because

the motion was untimely under Code § 19.2-266.2 and Rule 3A:9.

Code § 19.2-266.2 states, in relevant part:

> A.  Defense motions or objections seeking . . . (ii) dismissal of a
> warrant, information, or indictment or any count or charge thereof
> on the ground that:  (a) the defendant would be deprived of a
> speedy trial in violation of the provisions of the Sixth Amendment
> to the Constitution of the United States, Article I, Section 8 of the
> Constitution of Virginia, or § 19.2-243; or (b) the defendant would
> be twice placed in jeopardy in violation of the provisions of the
> Fifth Amendment to the Constitution of the United States or
> Article I, Section 8 of the Constitution of Virginia . . . shall be
> raised by motion or objection.
>
> B.  Such a motion or objection in a proceeding in circuit court shall
> be raised in writing, before trial.  The motions or objections shall
> be filed and notice given to opposing counsel not later than seven
> days before trial in circuit court or, if made under clause (ii) of
> subsection A, at such time prior to trial in circuit court as the
> grounds for the motion or objection shall arise, whichever occurs
> last. . . .  The circuit court may, however, for good cause shown
> and in the interest of justice, permit the motions or objections to be
> raised at a later time.

The plain language of Code § 19.2-266.2 requires defendants – absent good cause – to

make motions for dismissal of charges for constitutional and statutory speedy trial violations in

writing within the later of seven days before trial or as soon as the grounds for the motion arise

prior to trial.  These requirements are not superfluous administrative hurdles.  They "serve[ ]

legitimate state interests in protecting against surprise, harassment, and undue delay."  <u>Arrington</u>

<u>v. Commonwealth</u>, 53 Va. App. 635, 640 (2009) (quoting <u>Magruder v. Commonwealth</u>, 275 Va.

283, 300 (2008), <u>vacated and remanded sub nom</u>).  <u>See also</u> <u>Upchurch v. Commonwealth</u>, 31 Va. App. 48, 53 (1999) (explaining that the time requirements of Code § 19.2-266.2 are necessary to allow the Commonwealth to exercise its limited right to appeal).

In <u>Williams v. Commonwealth</u>, 57 Va. App. 750, 768 (2011), this Court held that a defendant waived his double jeopardy objection when he failed to comply with Code § 19.2-266.2 by raising the objection in writing before trial or by proving good cause for its later consideration.  Code § 19.2-266.2 treats motions and objections for double jeopardy violations similarly to motions and objections for speedy trial violations.  Therefore, assuming no good cause is shown, a defendant who fails to raise a written motion or objection seeking dismissal of charges based on a violation of his speedy trial rights, waives that objection.

In this case, Bass did not move for dismissal of the charges against him based on the violation of speedy trial until after his trial was completed and he had been found guilty.  Although the trial court listened to Bass's post-trial motion, it did not find that Bass had proved good cause for failing to bring the motion earlier.  To the contrary, the trial judge affirmatively stated that Bass waived his speedy trial objection by failing to raise it prior to trial.  He stated, "I think the failure to invoke the provisions of the statute until after final judgment is a waiver." Therefore, because Bass failed to timely file his motion (or prove good cause for such failure), he waived his right to argue on appeal to this Court that his speedy trial right was violated.

Rule 3A:9 also prescribes timeliness requirements for motions and objections for speedy trial violations.  Rule 3A:9 states, in relevant part, as follows:

> (b) *The Motion Raising Defenses and Objections.* – (1) Defenses and Objections That Must Be Raised Before Trial.  Defenses and objections based on defects in the institution of the prosecution or in the written charge upon which the accused is to be tried, other than that it fails to show jurisdiction in the court or to charge an offense, must be raised by motion made within the time prescribed by paragraph (c) of this Rule. . . .  *Failure to present any such*

> *defense or objection as herein provided shall constitute a waiver thereof. . . .*
>
>     *. . . .*
>
> (c) *Time of Filing Notice or Making Motion.* – A motion referred to in subparagraph (b)(1) shall be filed or made before a plea is entered and, in a circuit court, at least 7 days before the day fixed for trial, *or, if the motion raises speedy trial or Double Jeopardy grounds as specified in Code § 19.2-266.2A(ii), at such time prior to trial as the grounds for the motion or objection shall arise, whichever occurs last.*

(Emphases added.)

Similar to Code § 19.2-266.2, Rule 3A:9 dictates that a motion that "raises speedy trial" must be made "at least 7 days before the day fixed for trial, or . . . at such time prior to trial as the grounds for the motion or objection shall arise, whichever occurs last." Also similar to Code § 19.2-266.2, Rule 3A:9(d) permits the trial court to dispense with the waiver provisions of the rule upon a showing of good cause.

"We have stated that '[t]he plain language of the Rule states that the requirements of Rule 3A:9(b)(1) are mandatory, and "failure to raise such [defenses] properly is a waiver," unless "good cause" is shown.'" Rambo v. Commonwealth, 51 Va. App. 418, 424 (2008) (quoting Harris v. Commonwealth, 39 Va. App. 670 (2003) (*en banc*)). Although speedy trial is not specifically referenced in subsection (b)(1) of Rule 3A:9, the language of subsection (c) indicates that, except for permitting a motion for a violation of speedy trial to be filed later than seven days before trial if the grounds for the motion have not arisen, speedy trial and double jeopardy violations are also to be treated as waived if not timely brought. See Meyers v. Commonwealth, No. 150962, at *7 (Va. Jan. 12, 2017) ("When a defendant objects to an indictment on 'Double Jeopardy grounds,' he must file such objection by written motion before trial."); Clay v. Commonwealth, No. 0619-99-2, at *3 (Va. Ct. App. Sept. 5, 2000) ("Since appellant did not

- 10 -

comply with the notice provisions of Rule 3A:9 and did not show 'good cause,' he has waived the double jeopardy and Code § 19.2-294 defenses.").

At oral argument before this Court, Bass's counsel argued that Bass did make a pre-trial objection to the speedy trial violation because, on the March 21, 2017 order, Bass had the trial court note that he objected to the continuance on speedy trial grounds. The order itself states, "SPEEDY Trial is <u>NOT</u> waived."[6] However, this written objection does not fulfill the requirements of the statute or the rule because, when Bass made the motion, he was not seeking "dismissal of. . . charge[s]" for which he was about to be tried. <u>See</u> Code § 19.2-266.2(A)(ii); Rule 3A:9(c). The purpose of his written objection on March 21, 2017, was simply to ensure that the time period between March 21, 2017, and his trial was not tolled for speedy trial purposes.[7] Therefore, because Bass did not seek dismissal of the charges against him with his March 21, 2017 objection, he did not comply with the statute or rule.

---

[6] The April 10, 2017 order also states that the "continuance" from that date was "objected to by [defendant] to preserve speedy trial rights."

[7] Stough's communications with the trial judge at the April 10, 2017 hearing make it abundantly clear that Bass was not seeking dismissal of the charges against him at the time that the March 21, 2017 or April 10, 2017 orders were entered. At the April 10, 2017 hearing, Stough told the trial judge that he did not agree to the draft continuance order because the draft order stated that the matter was "continued on motion of the defendant" and he did not want his client "agreeing to a continuance order and potentially waiving a right to speedy trial." That statement prompted the judge, who recognized that the trial date had already been set to ask, "But you agreed to the trial date?" Bass's counsel responded, "I agreed to the trial date, but that is within the speedy trial timeframe." The trial judge then said, "I understand. So if we have to push the trial out we can deal with it on whatever date." Bass's objection only alerted the Commonwealth and the trial judge that he objected to those particular continuances to preserve his objection *in the event that the trial was continued beyond July 11, 2017*.

In addition, Stough's concession that July 11, 2017 was "within the speedy trial timeframe" implicates the doctrine of approbate and reprobate and bars him from arguing on appeal that July 11, 2017 fell outside of the speedy trial deadline. <u>See</u> <u>Vay v. Commonwealth</u>, 67 Va. App. 236, 263-64 (2017) ("The prohibition against approbation and reprobation forces a litigant to elect a particular position, and confines a litigant to the position that she first adopted.") (quoting <u>Matthews v. Matthews</u>, 277 Va. 522, 528 (2009)).

## Trial Court's Explanation for its Speedy Trial Ruling

Bass also argues that the trial court erred "in refusing to rule on appellant's objection to trial court's failure to delineate trial court's ruling as to dates and specific reasons for its findings regarding the speedy trial issues." He argues that the trial court's refusal to rule on his objection and clarify its reasoning for denying the speedy trial motion means, "the record lacks a coherent ruling as to the breakdown of the speedy trial clock and the reasons for the court's decision."

"Absent a statutory mandate, such as that applicable in habeas corpus proceedings . . . a trial court is not required to give findings of fact and conclusions of law." Fitzgerald v. Commonwealth, 223 Va. 615, 627 (1982). Here, the trial judge told Moore, Bass's post-trial counsel, that he would not give additional details for his ruling after he had already gone into considerable explanation of his ruling from the bench. The trial court was certainly not required to provide the litigants with a more detailed ruling than that already given in the eight and one-half pages of transcript containing the trial court's oral ruling in this case. Furthermore, the trial judge did indeed provide several reasons for his decision, including his finding that Bass had waived his speedy trial argument. We find no error by the trial court with regard to Bass's argument that the trial court did not provide an adequate ruling.

## Malfunctioning Audio Equipment During Closed Circuit Testimony

Bass contends that the trial court erred by failing to grant his motion for "a new trial based on the malfunctioning audio equipment during the closed-circuit testimony." While Bass agrees that D.B. was permitted to testify using close-circuit television pursuant to Code § 18.2-67.9, he contends that he was not "provided with a means of private, contemporaneous communication with his attorney during the testimony" as required by Code § 18.2-67.9(D) because of malfunctioning equipment. He also argues that this ruling "deprived appellant of his right to counsel as allowed under the Sixth Amendment of the United States Constitution and

violated his due process rights under the Fourteenth Amendment of the United States Constitution." However, we cannot reach the merits of Bass's argument because he failed to make a timely objection at trial, as required by Rule 5A:18.

"As a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal. Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." Roadcap v. Commonwealth, 50 Va. App. 732, 741 (2007) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 750 (emphasis in original), adopted upon reh'g en banc, 45 Va. App. 811 (2005)).

Here, when the trial judge learned that the phone system was broken, he proposed the plan whereby Bass would "simply pick up this phone and say I need to speak to you" and if there was any problem with that procedure, Bass could raise his hand to get the judge's attention. Stough, Bass's trial counsel, did not object to the procedure and, in fact, actually told the trial judge that the proposed plan "sounds great." The trial judge also confirmed with Bass that Bass understood the proposed procedure. Bass did not raise an objection until his post-trial "Motion for Retrial" and, at the hearing on the motion, his post-trial counsel admitted that Stough had agreed to the procedure. Therefore, because Bass did not make a timely objection to properly preserve these issues and actually even agreed to the procedures used, Rule 5A:18 bars our consideration of these arguments on appeal.[8]

Motion to Suppress

Bass argues that the trial court erred in denying his motion to suppress his confession because he contends that he made a clear and unequivocal request for counsel when he made the

---

[8] Bass does not ask this Court to consider his argument under Rule 5A:18's ends of justice exception, and this Court will not do so *sua sponte*. Widdifield v. Commonwealth, 43 Va. App. 559, 564 (2004) (*en banc*).

following statement approximately eight minutes and thirty seconds into his interview with Detective Ownby, prior to confessing to the crimes: "Is there any way uh I could have um like a an attorney or something present or a lawyer or something and um maybe a like a mental health professional?"

"The principle is now well-established that, pursuant to the Fifth Amendment of the United States Constitution, law enforcement officers must inform a suspect in a custodial interrogation of certain rights, including the right to remain silent and to have the assistance and presence of legal counsel during the interrogation." Stevens v. Commonwealth, 283 Va. 296, 302 (2012). "If a suspect waives his right to counsel after he has received Miranda warnings, the police officers are free to interrogate him, but if the suspect requests counsel at any time during the interrogation, the interrogation must cease until an attorney has been made available to the suspect or the suspect reinitiates the interrogation." Commonwealth v. Redmond, 264 Va. 321, 328 (2002). "The question whether a suspect actually invoked his right to counsel involves an objective inquiry." Commonwealth v. Hilliard, 270 Va. 42, 49 (2005). The demand must be stated such that a "reasonable police officer under the circumstances would understand the statement to be a request for counsel." Id. "If, however, a suspect's reference to an attorney is either ambiguous or equivocal, such that a reasonable officer under the circumstances would only have understood that the suspect *might* be invoking his right to counsel, the officer is not required to stop questioning the suspect." Id.

The question of "whether a suspect invoked his right to counsel presents a mixed question of law and fact." Id. This Court "must review the circuit court's findings of historical fact only for clear error, and . . . give due weight to inferences drawn from those factual findings." Redmond, 264 Va. at 327. Thus, under this standard of review, "the determination of what [the defendant] actually said is a question of fact that we review only for clear error. . . .

- 14 -

Whether those words are sufficient to invoke the right to counsel is a legal determination that we review *de novo.*" Id. (alterations in original) (quoting United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993)).

The trial court found that Bass's words were a question – not a statement. The trial judge also found that Bass was "asking a question but he is never really saying I wanted a lawyer here. He is asking *is there any way I can have an attorney.*" (Emphasis added.) Therefore, we defer to the trial court's finding of fact that Bass's words were in the form of a question and we review the words themselves, in context, to determine if they were legally sufficient to support the trial court's conclusion.

We agree with the trial court's conclusion that Bass's request was not a clear and unequivocal request for counsel. Deferring to the trial court's findings that Bass's words were a question rather than a statement and that Bass was seeking to determine if there was "any way" he could have an attorney, Bass's question was more akin to a clarification of his rights, rather than a demand for an attorney. See Redmond, 264 Va. at 330 (holding defendant's questions, "Can I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?" could "at best . . . .be construed as a desire on his part to obtain more information about his Miranda rights" and was not an unequivocal invocation of his right to counsel). See also Hilliard, 270 Va. at 51 (concluding defendant's question, "Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?" after his Miranda rights had been read "was merely an inquiry requesting a clarification or affirmation of the rights that had just been explained to him"). In addition, Bass's words indicate uncertainty about whom he might want present in the room. He asked about "an attorney *or something*" and also asked about potentially having a mental health professional present. (Emphasis added.) Reviewed under the proper objective inquiry, a reasonable officer under the circumstances would only have

- 15 -

understood that Bass *might* have been invoking his right to counsel and, therefore, was not obligated to stop questioning him because Bass's statement was not only a question but was also hardly an unambiguous request for an attorney.[9] Consequently, the trial court did not err in denying Bass's motion to suppress.[10]

### III. CONCLUSION

In short, Bass failed to comply with the requirements of both Code § 19.2-266.2 and Rule 3A:9. Under the statute and also under the Rule, Bass was required to file a written motion or objection to have the charges dismissed for speedy trial reasons at least seven days prior to trial, but he did not file his motion until the trial had finished and after he had already been found guilty. Bass did not show good cause for his failure to comply with these requirements, and the trial court concluded that Bass had waived his speedy trial right because he did not bring this motion earlier. We agree and find no error with the trial court's denial of that motion. We also find no error with the alleged lack of specificity in the trial court's ruling on the speedy trial issue. While the trial court was not obligated to give a detailed ruling, the trial court's ruling expresses several reasons for denying Bass's motion, and covers over eight and one-half pages in

---

[9] On appeal, Bass does not specify which statement to the police was the unambiguous request for counsel. Bass's trial counsel stated that he was relying only on the statement made by Bass at the eight and one-half minute mark of the audio recording to support his motion to suppress. However, the trial judge's findings indicate that he considered both the statement at the eight and one-half minute mark and the statement at the twelve and one-half minute mark. Assuming Bass preserved an argument regarding the second statement, that statement was certainly not an unambiguous request for counsel because Bass only asked what difference it would make if he had counsel present – not that he wanted counsel present.

[10] The Commonwealth also contends that Bass waived this argument by introducing "evidence of the same character" when Bass testified in his own defense. Our Supreme Court has "held that '[t]he rule is that "where an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error.'"" Zektaw v. Commonwealth, 278 Va. 127, 134 (2009) (quoting Hubbard v. Commonwealth, 243 Va. 1, 9 (1992)). Because we conclude that the trial court did not err in denying the motion to suppress, we need not reach this argument.

the transcript, including specifically noting Bass's waiver of the argument for failure to bring the motion prior to trial.

Pursuant to Rule 5A:18, we do not address Bass's argument regarding the malfunctioning phone system during D.B.'s testimony. Not only did Bass not make a timely objection to the alternate procedure, Bass's trial counsel also participated in deciding on the procedure and actually affirmatively agreed to it, saying that the procedure proposed "sounds great."

Lastly, the trial court did not err in denying Bass's motion to suppress his confession because a reasonable police officer would not have understood his statement to be an unambiguous request for counsel. His words were a question – not a statement – and they only clearly expressed his desire to further clarify his right to have certain other individuals present in the room. Because his question was ambiguous and equivocal, the trial court did not err in denying the motion to suppress.

For all of these reasons, we affirm Bass's convictions.

<u>Affirmed.</u>