COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, AtLee and Malveaux
Argued at Fredericksburg, Virginia


ERIC FITZGERALD JONES

                                                        MEMORANDUM OPINION* BY
v.        Record No. 1359-18-4                   JUDGE MARY BENNETT MALVEAUX
                                                            JANUARY 14, 2020
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                                    Lisa B. Kemler, Judge[1]

            David J. Kiyonaga (Sebastian M. Norton; David J. Kiyonaga PLLC;
            The Norton Firm, LLC, on brief), for appellant.

            A. Anne Lloyd, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


        Eric Fitzgerald Jones ("appellant") was convicted of possession of a firearm after having

been convicted of a violent felony, in violation of Code § 18.2-308.2.  On appeal, he argues that the

trial court erred by:  (1) denying his motion to suppress statements obtained in violation of his Fifth

Amendment rights; (2) failing to strike the evidence against him as insufficient as a matter of law;

and (3) denying in part his motion for stipulation that he had been convicted of a violent felony.  For

the following reasons, we affirm.

--------

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Judge Nolan B. Dawkins presided over the hearing on appellant's motion to suppress
and motion for stipulation, while Judge Lisa B. Kemler presided over appellant's jury trial.

## I. BACKGROUND

### The Offense

On New Year's Eve, December 31, 2017, Jonathan Tracy viewed a fireworks display from the window of his apartment, located on the fifth floor of a building on North Patrick Street in Alexandria. Shortly after midnight, Tracy, who was familiar with firearms from his service in the military, heard between two and six "pops." When Tracy looked in the direction of the sound, he saw three individuals walking on the sidewalk on Colonial Avenue. The individuals then turned onto First Street and walked toward North Patrick Street. As Tracy watched, one of the men held a gun in the air and fired it several times. Tracy "jump[ed]" back from the window and heard two more shots. He told his wife to call 911 and then returned to the window, where he saw the three men walking down the sidewalk on First Street toward North Patrick Street. Tracy was unable to identify the person firing the firearm.

John Metcalf, who lived nearby, also heard multiple gunshots around midnight. His home faces the entryway to 935 North Patrick Street, an apartment building. Metcalf gave police a video recording ("exterior video") from his surveillance camera. The time-stamped exterior video depicted three men walking toward the intersection of First Street and Colonial Avenue at 12:04 a.m. At 12:05 a.m., the three individuals ran to the doorway of 935 North Patrick Street. One of the men entered the building while the other two remained outside.

Police obtained a surveillance video from the camera inside the entrance of 935 North Patrick Street ("interior video"). This video showed a male individual wearing a snowman sweater standing outside the glass door of the building and then opening the door for another individual who entered the apartment building at 12:05 a.m. This man appeared to be holding a black object in his right hand next to his right thigh. In addition, both the interior video and the

exterior video depict the man in the sweater and a third male entering the building at 12:12 a.m., walking in the same direction that the first man had walked when he entered the building.

A 911 dispatcher received a call at 12:05 a.m. reporting gunshots on First Street. Officer Westrick McIlvaine of the Alexandria Police Department arrived at 12:09 a.m. and approached the two men standing outside the entrance to 935 North Patrick Street. McIlvaine briefly spoke with the men but did not detain them.

Police later found nine bullet casings near the intersection of First Street and Colonial Avenue. Forensic analysis determined that all of the casings were Winchester brand .40 caliber S&W bullet casings that were fired from the same weapon. At trial, a firearms expert identified examples of pistols that could expel that type of casing. Images of those firearms were admitted into evidence, but no actual firearms were submitted for analysis or into evidence.

Following appellant's arrest, Detective Bikeramjit Gill interviewed him at police headquarters. Detective Gill testified that he showed appellant still images taken from the interior video at 935 North Patrick Street. Appellant admitted that the person depicted in those images was him. He also admitted to being at the scene where the shots were heard, although he denied seeing anyone fire a gun. He denied that the object visible in his right hand in the interior video was a firearm and stated it was a phone. A black iPhone was recovered from appellant when he was arrested and was admitted into evidence.

Motion to Suppress

Prior to trial, appellant filed a motion to suppress statements he made to police during the interview following his arrest.

The evidence adduced at the motion to suppress hearing was that appellant was arrested on January 18, 2018. At that time, Detective Gill informed him that he was under arrest for a firearm violation. Appellant was then transported to the Alexandria Police Department for an

interview. Detective Ryan Clinch escorted appellant into an interview room. Prior to taking him into the room, Clinch did not ask appellant any questions, nor did he read him his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Another officer, Officer Brooks, was also present in the interview room.

Almost immediately upon entering the interview room, appellant asked the officers, "Hey, can you call my wife to tell her to call my lawyer for me?" Detective Clinch replied, "Umm, do you know the number?" Appellant responded, "Yeah, I'm going to give you her number." Officer Brooks then said, "Hold on, sit tight." Brooks began removing appellant's handcuffs and helping him to take off his coat. As Detective Clinch was leaving the room to get coffee for appellant, appellant asked, "You're gonna make the phone call," and Clinch responded, "Yeah, yeah, when I get the chance." Detective Clinch then told appellant that he was going to make some coffee and that it would take about ten minutes and exited the room with Officer Brooks, leaving appellant alone in the room.

When Detective Clinch left the room, he informed Detective Gill that appellant "had asked to call his girlfriend and tell her to call his attorney." Neither Gill nor Clinch called appellant's wife. After about ten minutes, Detective Gill entered the interview room. When Gill entered the witness room, he introduced himself to appellant and told him that he needed to advise appellant of his rights before they could talk. Gill reviewed appellant's rights under Miranda with him and confirmed that appellant understood those rights before questioning him further. Appellant signed a written waiver of his rights. Appellant subsequently made the statements that were introduced at trial through Gill's testimony.

At the suppression hearing, appellant argued that his statement, "Hey, can you call my wife to tell her to call my lawyer for me?," was an unambiguous and unequivocal assertion of his right to counsel during a custodial interview. Further, this request was "a demand" and not "a

question." The Commonwealth contended that appellant's statement was a question that was inherently ambiguous and equivocal.

After hearing argument, the trial court denied appellant's motion to suppress without further comment.

### Motion for Stipulation

At the same pretrial hearing, appellant, relying on Old Chief v. United States, 519 U.S. 172 (1997), requested that the trial court require the Commonwealth to stipulate that he had been previously convicted of a felony. He argued that the stipulation should not include any reference to the fact that the felony had been "violent," because to include the nature of the felony would be unfairly prejudicial.

After hearing argument, the trial court granted appellant's motion in part. The court specifically ruled that the Commonwealth could not introduce evidence that appellant's prior violent felony was for "murder"; instead, "the word violent felony will be used."

At trial, the stipulation that appellant had been previously convicted of a violent felony was read to the jury and admitted into evidence. Additionally, the court, upon appellant's request, instructed the jury that "[t]he Commonwealth has offered this stipulation into evidence for the sole purpose of proving that [appellant] was convicted of the prior offense. You should not use this fact for any other purpose in your deliberations."

### Motion to Strike

At the conclusion of the Commonwealth's evidence, appellant moved to strike the evidence, arguing that the Commonwealth had not proved that he had ever possessed a firearm. The court took the motion to strike under advisement, and then denied the motion. Appellant presented no evidence, but renewed his motion to strike, which the court denied.

The jury found appellant guilty of possession of a firearm after having been convicted of a violent felony.

Appellant appealed to this Court.

## II.  ANALYSIS

### A.  Motion to Suppress

On appeal, appellant first argues that the trial court erred in denying his motion to suppress statements obtained in violation of his Fifth Amendment rights.

"The principle is now well-established that, pursuant to the Fifth Amendment of the United States Constitution, law enforcement officers must inform a suspect in a custodial interrogation of certain rights, including the right to remain silent and to have the assistance and presence of legal counsel during the interrogation." Bass v. Commonwealth, 70 Va. App. 522, 539-40 (2019) (quoting Stevens v. Commonwealth, 283 Va. 296, 302 (2012)).  "If the accused expresses a desire to have counsel present during a custodial interrogation, law enforcement officers must cease their interrogation until counsel is present or the accused initiates further communication with the authorities." Stevens, 283 Va. at 302.  Our Supreme Court has made clear that "[t]he question [of] whether a suspect actually invoked his right to counsel involves an objective inquiry." Commonwealth v. Hilliard, 270 Va. 42, 49 (2005).  "To invoke this right, a suspect must state his desire to have counsel present with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for counsel." Id.  "If, however, a suspect's reference to an attorney is either ambiguous or equivocal, such that a reasonable officer under the circumstances would only have understood that the suspect *might* be invoking his right to counsel, the officer is not required to stop questioning the suspect." Id.

"The question of 'whether a suspect invoked his right to counsel presents a mixed question of law and fact.'" Bass, 70 Va. App. at 540 (quoting Hilliard, 270 Va. at 49). This Court "must review the circuit court's findings of historical fact only for clear error, and . . . give due weight to inferences drawn from those factual findings." Commonwealth v. Redmond, 264 Va. 321, 327 (2002). Thus, under this standard of review, "the determination of what [the defendant] actually said is a question of fact that we review only for clear error. . . . Whether those words are sufficient to invoke the right to counsel is a legal determination that we review *de novo*." Id. (alterations in original) (quoting United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993)).

Here, the trial court did not make any factual findings regarding the motion to suppress. As such, our review is limited to a *de novo* consideration of whether appellant's "words, taken in context, were sufficient to invoke his right to counsel." Hilliard, 270 Va. at 50.

Appellant argues that his words, "Hey, can you call my wife to tell her to call my lawyer for me?," along with his question to Detective Clinch when the detective was leaving the room, "You're gonna make the phone call," indicate repeated requests for someone to call his wife in order to contact his attorney. He asserts that these repeated requests were not made in order to clarify his rights or as mere expressions about the wisdom of continuing the interrogation without consulting a lawyer. Rather, appellant argues, these requests "were clear, unambiguous and unequivocal requests for counsel."

However, applying the well-established legal principles articulated by prior Virginia appellate decisions, we hold that appellant failed to make a clear and unambiguous invocation of his right to counsel. Neither of appellant's statements—his initial request for police to call his wife and his later question to the detective inquiring if he was going to call her—evidenced an unambiguous request for counsel.

Appellant's first statement, "Hey, can you call my wife to tell her to call my lawyer for me?," did not indicate a clear invocation of his right to counsel because a reasonable officer would not know with clarity that appellant wanted to have an attorney present for his interrogation. Rather, appellant's question could have indicated that he wanted his wife to call a lawyer so that a lawyer could be present at his interrogation, *or* it could have indicated that he wanted to notify a lawyer that he faced future legal issues, *or* it could have indicated that he wanted a lawyer to assist him at some future stage in the legal proceedings. Appellant's request to call his wife to have her call his attorney did not clearly and unambiguously indicate that he wanted his wife to call the attorney in order for counsel to be present for the interrogation. Appellant did not state that he wanted his wife to call his attorney in order to "get him here" or "have him present," or use any other phrasing indicating his desire to have counsel present at that time. Instead, appellant's statement was simply a request for his wife to call a lawyer, with this statement not providing any further guidance or clarity on whether he desired to talk to a lawyer for the purposes of the interrogation.

Appellant's second statement, "You're gonna make the phone call," presented the same ambiguity. While appellant asked the detective if he was going to call his wife in order for her to call an attorney, there is no indication in his words that he wanted an attorney present for his interrogation. Thus, we do not view his statements as clearly demonstrating his invocation of his right of counsel during questioning.

In the instant case, appellant never requested a lawyer to assist him in his current dealings with the police. He merely asked if he could call his wife for her to then call his attorney. To invoke the right to counsel at interrogation, "a suspect must state his desire to have counsel *present* with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for counsel." Hilliard, 270 Va. at 49 (emphasis added).

Because appellant did not make an unambiguous invocation of his right to have counsel present at the interrogation, we find that the trial court did not err in denying his motion to suppress the statements that he made during this interrogation.

## B. Sufficiency of the Evidence

Appellant next argues that the trial court erred in denying his motion to strike the evidence. He contends that the evidence the Commonwealth presented at trial was insufficient for any rational fact finder to conclude beyond a reasonable doubt that he was in possession of a firearm on January 1, 2018.

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99 (2002)). As the Commonwealth was the prevailing party below, we state the facts in the light most favorable to it. Gerald v. Commonwealth, 295 Va. 469, 472 (2018).

"[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Finney v. Commonwealth, 277 Va. 83, 89 (2009) (second alteration in original) (quoting Dowden v. Commonwealth, 260 Va. 459, 468 (2000)). "Circumstantial evidence is not viewed in isolation. While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Muhammad v. Commonwealth, 269 Va. 451, 479 (2005). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the

burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513 (2003).

Contrary to appellant's argument, the evidence adduced at trial was sufficient to support his conviction for possession of a firearm after having been convicted of a violent felony. The evidence established that shortly after midnight on January 1, 2018, Jonathan Tracy heard popping sounds, then looked out of his window and saw an individual, within a group of three, holding a firearm in the air and discharging it several times. Tracy was familiar with firearms from his service in the military. Another nearby resident, John Metcalf, also heard multiple gunshots around midnight. An exterior surveillance video showed three men standing on the corner of First Street and Colonial Avenue just after midnight and then showed them at 12:05 a.m. running toward the entrance of an apartment building at 935 North Patrick Street. The exterior video also shows one of the individuals entering the building at this time. An interior surveillance video depicted appellant as he entered the apartment building at 12:05 a.m. Appellant was holding a black object in his right hand next to his right thigh as he entered the building. Although a firearm was not recovered, the jury was presented with images of guns that were capable of expelling cartridge casings like the ones found on First Street and had the opportunity to compare those images with the image of the object in appellant's hand. Appellant admitted that he was in the area on the night in question and was the person depicted entering the apartment building. While he denied that he had possessed a gun, the jury was entitled to reject his denial. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Speller v. Commonwealth, 69 Va. App. 378, 388 (2018).

Here, the exterior video showed three individuals running toward the apartment building at 12:05 a.m. and one of the individuals entering the building at that time. The interior video

showed that appellant was the individual who entered the apartment building and that he held a black object close to his thigh. This occurred shortly after shots were fired on a street nearby. Considering the totality of the evidence, a rational fact finder could have concluded that the object in appellant's hand as he entered the apartment building was a firearm. Thus, this Court cannot say on appeal that this determination was plainly wrong or without evidence.

### C. Motion for Stipulation

Finally, appellant argues that the trial court erred in denying in part his motion for stipulation. Appellant contends that the trial court erred in not allowing his proffered stipulation, that he had previously been convicted of a felony and instead entering a stipulation that he had previously been convicted of a violent felony. Appellant asserts that instructing the jury that he had been found guilty of a violent felony was itself highly prejudicial and constituted an abuse of discretion.

"'[T]he admissibility of evidence is within the discretion of the trial court' and an appellate court will not reject the decision of the trial court unless it finds an abuse of discretion." Hicks v. Commonwealth, 60 Va. App. 237, 244-45 (2012) (quoting Midkiff v. Commonwealth, 280 Va. 216, 219 (2010)). "Under this deferential standard, a 'trial judge's ruling will not be reversed simply because an appellate court disagrees;' only in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." Campos v. Commonwealth, 67 Va. App. 690, 702 (2017) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45 Va. App. 811 (2005)).

Code § 18.2-308.2(A) provides, in pertinent part:

> It shall be unlawful for (i) any person who has been convicted of a felony . . . whether such conviction or adjudication occurred under the laws of the Commonwealth, or any other state, the District of Columbia, the United States or any territory thereof, to knowingly and intentionally possess or transport any firearm . . . . Any person who violates this section shall be guilty of a Class 6 felony.

However, any person who violates this section by knowingly and intentionally possessing or transporting any firearm and who was previously convicted of a violent felony as defined in [Code] § 17.1-805 shall be sentenced to a mandatory minimum term of imprisonment of five years.

Pursuant to this statute, the Commonwealth bears the burden of proving both the fact and type of the accused's qualifying prior conviction beyond a reasonable doubt. See Boone v. Commonwealth, 285 Va. 597, 601 (2013) ("[T]he phrase 'previously convicted of a violent felony' in Code § 18.2-308.2(A) . . . sets forth an additional element the Commonwealth is required to prove beyond a reasonable doubt to obtain an enhanced sentence.").

However, appellant contends that despite the fact that the Commonwealth had the burden to prove he had committed a prior violent felony to obtain the enhanced sentence under the statute, the introduction of a stipulation that he had been convicted of a prior violent felony was unduly prejudicial in this case.[2] We find appellant's contention without merit, for two reasons.

First, we note that appellant's motion for stipulation was granted in part—the Commonwealth was prohibited from introducing evidence of his actual prior conviction for second-degree murder. Rather than allowing the Commonwealth to introduce the prior offense, the trial court allowed appellant to stipulate that he had been convicted of a prior violent felony. Because this stipulation was clearly less prejudicial than the admission of his actual prior offense, we reject appellant's argument that the stipulation was unduly prejudicial.

---

[2] Appellant also argues under this assignment of error that "the issue of whether the previous felony conviction was violent w[as] . . . a matter of law to be decided by the court, not the jury," thus the trial court abused its discretion in admitting the stipulation that he had been previously convicted of a violent felony. We reject this argument, noting as we did above that whether appellant had previously been convicted of a violent felony was "an additional element" that "the Commonwealth is required to prove beyond a reasonable doubt to obtain an enhanced sentence." Boone, 285 Va. at 601. Whether the Commonwealth's evidence established this additional element is a question for the finder of fact, in this case, the jury. See Washington v. Commonwealth, 272 Va. 449, 459 (2006) ("[T]his Court has repeatedly held that the prior convictions of a criminal defendant facing trial as a recidivist may be introduced and proved at the guilt phase of the trial on the principal offense.").

Second, Virginia appellate courts have consistently held that, where there are concerns that evidence may be unfairly prejudicial, a limiting or clarifying instruction is the appropriate remedy. See LeVasseur v. Commonwealth, 225 Va. 564, 589 (1983) (holding that juries are presumed to follow prompt cautionary instructions regarding the limitations placed upon evidence); Essex v. Commonwealth, 18 Va. App. 168, 172 (1994) (noting that the prejudice of introducing defendant's prior convictions "may be alleviated by a jury instruction limiting the purpose for which the evidence is offered"); Woodson v. Commonwealth, 16 Va. App. 539, 541 (1993) (noting that "[a] cautionary instruction to the jury is appropriate in a trial" when the offense involved enhanced punishment provisions). In this case, when the stipulation was read to the jury and admitted into evidence, the court instructed the jury that "[t]he Commonwealth has offered this stipulation into evidence for the sole purpose of proving that [appellant] was convicted of the prior offense. You should not use this fact for any other purpose in your deliberations." A jury is presumed to follow the instructions given it; thus we conclude that any undue prejudice was cured by the court's instruction. Therefore, the trial court did not err in denying in part appellant's motion for stipulation.[3]

---

[3] Appellant also argues that the Supreme Court's decision in Old Chief compels the conclusion that the admission of the stipulation in this case constituted an abuse of discretion. However, a reading of Old Chief belies appellant's contention. In Old Chief, the accused was charged with possession of a firearm by a convicted felon, in violation of a federal law, 18 U.S.C. § 922(g)(1). 519 U.S. at 174. At trial, the accused offered to stipulate that he had a prior felony conviction. Id. at 175. The district court allowed the introduction of the conviction order rather than the stipulation. Id. at 177. Relying on Federal Rule of Evidence 403, which authorized exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," the Supreme Court concluded the probative value of the conviction itself was outweighed by the substantial risk of prejudice to the accused. Id. at 180, 191.

Old Chief interpreted a federal evidentiary rule that closely aligns with its Virginia counterpart, Rule of Evidence 2:403. However, Old Chief concerned a federal firearm statute which has fundamental differences from the Virginia statute. 18 U.S.C. § 922(g)(1) provides, in pertinent part, that it is "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Thus, it

III.  CONCLUSION

We hold that the trial court did not err in denying appellant's motion to suppress and in denying in part his motion for stipulation.  We also hold that the evidence was sufficient to support his conviction for possession of a firearm after having been convicted of a violent felony. Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>

---

is clear that the federal statute, in contrast to Virginia's statute, does not include statutorily-mandated degrees of punishment differentiating among types of felonies.  <u>See</u> <u>Old Chief</u>, 519 U.S. at 186 ("The statutory language in which the prior-conviction requirement is couched shows no congressional concern with the specific name or nature of the prior offense beyond what is necessary to place it within the broad category of qualifying felonies . . . .").  In this case, pursuant to Code § 18.2-308.2(A), the Commonwealth was required to prove that appellant had previously been convicted of a specific type of felony—a *violent* felony—rather than simply a felony.  We find that <u>Old Chief</u> is not controlling in the situation before us, where the Commonwealth was required to prove that appellant had committed a specific type of felony and appellant was allowed to stipulate that he had previously committed this type of felony, rather than have his actual prior offense admitted into evidence.