COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Lorish and Senior Judge Annunziata
Argued at Alexandria, Virginia


SERGIO A. ALBERTO RODRIGUEZ

                                                      MEMORANDUM OPINION* BY
v.        Record No. 1394-21-4                 JUDGE ROSEMARIE ANNUNZIATA
                                                           OCTOBER 11, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge[1]

Christopher Leibig (Law Office of Christopher Leibig LLC, on
briefs), for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Sergio A. Alberto Rodriguez (Alberto

Rodriguez) for aggravated sexual battery and two counts of sexual penetration of a child under

the age of thirteen.  The trial court sentenced Alberto Rodriguez to life imprisonment with all but

five years suspended upon the convictions for sexual penetration and to twenty years of

imprisonment for aggravated sexual battery.  Alberto Rodriguez argues that the trial court erred

in denying his motion to suppress his statement to the police, contending that the police subjected

him to custodial interrogation in violation of his constitutional rights.  We agree that the trial court

erred in denying the motion to suppress and reverse the judgment.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Daniel S. Fiore, II, presided at Sergio A. Alberto Rodriguez's jury trial and
sentenced him.  Judge Louise M. DiMatteo presided at the pre-trial hearing on the motion to
suppress the evidence.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any of Alberto Rodriguez's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

On June 23, 2020, Arlington Police Detective Joanbel Echenique was investigating an allegation that Alberto Rodriguez sexually assaulted his niece, E.N., in 2018. While conducting surveillance outside Alberto Rodriguez's suspected residence, the police and E.N.'s mother called Alberto Rodriguez's wife on the telephone. Alberto Rodriguez left the residence about ten minutes after the call and walked toward a metro station.

Detective Echenique stopped Alberto Rodriguez on the street. Detective Echenique, who speaks Spanish, read Alberto Rodriguez his *Miranda v. Arizona*, 384 U.S. 436 (1966), rights in Spanish using a printed card. Alberto Rodriguez indicated that he understood his rights. Detective Echenique asked to speak to Alberto Rodriguez, said that he was not under arrest, and suggested that they could talk there on the street or go to a location in the nearby courthouse for more privacy. They began speaking on the street, but Alberto Rodriguez said that he preferred to go to the courthouse for privacy.

Alberto Rodriguez and Detective Echenique walked together to the courthouse and went to an interview room. Detective Echenique produced a form reciting the *Miranda* warnings in English; when questioning a native speaker of Spanish he typically used a form in that language, but he did not have one available. Nonetheless, Alberto Rodriguez indicated that he could read English, read the form, and signed it.

Detective Echenique then interviewed appellant in Spanish; the conversation was recorded on video and later transcribed and translated into English. Detective Echenique translated a portion of the discussion himself, and a certified translator produced a complete English translation. During the ensuing interview, Detective Echenique repeatedly told Alberto Rodriguez that he was free to leave, reminded him that he was not under arrest, and thanked him for coming to the courthouse voluntarily.

After preliminary discussion about Alberto Rodriguez's background, the detective and Alberto Rodriguez discussed E.N.'s allegation that he had sexually abused her. During the conversation, Alberto Rodriguez answered a cell phone call from his wife and mentioned the presence of an attorney to her. Detective Echenique offered to have someone escort Alberto Rodriguez's wife into the building and provided him with water to drink.

Detective Echenique said that E.N. had accused Alberto Rodriguez of rape, and asked Alberto Rodriguez about his understanding of the term "rape." Alberto Rodriguez then conversed with Detective Echenique about a lawyer, as follows:

> Alberto [Rodriguez]: I already explained to you that, I'm not going to . . . .
>
> Echenique: You told me that, you gave me the definition of abuse[.]
>
> Alberto [Rodriguez]: But one thing, I have to answer all your questions without a lawyer[,] or . . . .
>
> Echenique: You tell me. You are not under arrest. I told you on the street and I told you here. You are not under arrest[.]
>
> Alberto [Rodriguez]: Because I don't want to, I don't want to be answering the question to you when I don't even have the answer, when I should have a lawyer, when afterwards everything I've been talking to you is going to be used against me. Do you understand me?
>
> Echenique: Exactly[.]

Alberto [Rodriguez]: Right. I don't understand why you have me here to ask me those questions when I don't have to answer the question if I don't have a lawyer.

Echenique: O[k.]

Alberto [Rodriguez]: In any case, I would need a lawyer to answer that question for you[.]

Alberto Rodriguez then asked Detective Echenique to explain E.N.'s accusations, and the detective did so. Detective Echenique also falsely told Alberto Rodriguez that DNA evidence found in E.N.'s vagina implicated him.

In response to Detective Echenique's questions, Alberto Rodriguez initially denied that he abused or raped E.N. He said that he may have unintentionally touched her "intimate part" while they were "playing." Eventually, Alberto Rodriguez admitted that he had touched E.N.'s labia majora twice, but he denied raping her. He also said that he knew that his actions were wrong.

At the end of the interview, Detective Echenique said that he would take Alberto Rodriguez downstairs to see his wife and that he was not under arrest. The detective specifically said that Alberto Rodriguez "was not under arrest," and Detective Echenique was "going to let [him] go."

Before trial, Alberto Rodriguez moved to suppress his statement to the police, arguing that he invoked his right to counsel during the interview and the police continued to question him in violation of the rule of *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), that if a suspect requests counsel during custodial police interrogation, the questioning must cease until an attorney is provided for him. The trial court held that Alberto Rodriguez did not unequivocally assert his right to counsel, and denied the motion to suppress.

At trial, E.N. testified that in August 2018 she traveled to Niagara Falls with Alberto Rodriguez and his wife, who was E.N.'s aunt. Afterward, E.N. returned to Alberto Rodriguez's Arlington County home to spend the week with him and her aunt.

Alberto Rodriguez and E.N. were alone in the apartment during that week while the aunt and her adult sons were at work. Alberto Rodriguez spent a lot of time in his bedroom that week as he said he was ill. At one point when they were alone in the apartment, Alberto Rodriguez called E.N. into the bedroom with him and let her play video games on his computer tablet. Alberto Rodriguez pulled her "closer and closer" on the bed and moved the bedclothes over her. He pulled down her sweatpants and underpants. Using his hands and fingers, Alberto Rodriguez touched her vagina and put his finger inside her. E.N. tried to escape from Alberto Rodriguez.

Alberto Rodriguez touched E.N.'s vagina in the same manner on a second occasion that week, again while under the covers on Alberto Rodriguez's bed. In addition, however, Alberto Rodriguez took her hand and said he had "a surprise" for her. He put her hand on his penis and squeezed her hand. E.N. tried to pull her hand away but he continued to hold it in place. E.N. could not escape because Alberto Rodriguez held her down with one of his legs.

Alberto Rodriguez told E.N. not to tell her aunt or anyone else about the touching. Nonetheless, E.N. said that, after the second incident, she told the aunt about what Alberto Rodriguez had done, and he "denied everything."

The day after E.N. reported the abuse, the aunt did not take E.N. to the doctor as she had promised. E.N. testified that Alberto Rodriguez admitted to his wife that E.N. had told the truth about what happened; he then packed his belongings and left for Honduras. Afterward, the aunt appeared to blame E.N., was angry at her, and would not look at her. When she delivered E.N. home to Baltimore that weekend, the aunt lied to E.N.'s mother about the reason for Alberto Rodriguez's absence and did not mention what had happened between him and E.N.

E.N.'s mother testified that E.N. had called her and was crying during the visit with Alberto Rodriguez and his wife, but E.N. would not explain why she was upset. E.N.'s mother noticed changes in the child's behavior once she returned home; she did not want to eat or have others close to her. In March 2020, E.N.'s mother confronted her about the changes in her behavior. E.N. began crying, then revealed how Alberto Rodriguez had sexually abused her.[2] E.N.'s mother contacted the police.

Alberto Rodriguez introduced no evidence at trial. Following his jury trial, the trial court convicted Alberto Rodriguez for two counts of sexual penetration with an object and aggravated sexual battery. He appeals.

## ANALYSIS

### Right to Counsel

Alberto Rodriguez contends that the trial court erred in denying his motion to suppress his statement to the police. Specifically, he argues that the police subjected him to custodial interrogation after he invoked his *Miranda* right to counsel.[3] "In reviewing the denial of a motion to suppress, we 'consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). "It is the appellant's burden to show

---

[2] E.N.'s mother testified that E.N. reported that Alberto Rodriguez penetrated her vagina once with his penis and once with his fingers.

[3] In his opening brief, Alberto Rodriguez asserted that the police unlawfully interrogated him after he invoked his right to remain silent and asked this Court to invoke the ends of justice exception to Rule 5A:18 and consider the issue if he did not properly preserve it in the trial court. At oral argument, however, Alberto Rodriguez's attorney stated that the assignment of error on appeal was limited to whether Alberto Rodriguez invoked his right to counsel and whether the police scrupulously honored that invocation. Thus, we consider any claim that Alberto Rodriguez invoked his right to silence waived, and we do not consider it.

that when viewing the evidence in such a manner, the trial court committed reversible error." *Id.* (quoting *Hairston*, 67 Va. App. at 560).

"The principle is now well-established that, pursuant to the Fifth Amendment of the United States Constitution, law enforcement officers must inform a suspect in a custodial interrogation of certain rights, including the right to remain silent and to have the assistance and presence of legal counsel during the interrogation." *Bass v. Commonwealth*, 70 Va. App. 522, 539-40 (2019) (quoting *Stevens v. Commonwealth*, 283 Va. 296, 302 (2012)).  If a suspect waives his right to an attorney after he has received *Miranda* warnings, the police "are free to interrogate him, but if the suspect requests counsel at any time during the interrogation, the interrogation must cease until an attorney has been made available to the suspect or the suspect reinitiates the interrogation." *Id.* at 540 (quoting *Commonwealth v. Redmond*, 264 Va. 321, 328 (2002)); *see also Edwards*, 451 U.S. at 484-85.  "The question whether a suspect actually invoked his right to counsel involves an objective inquiry." *Id.* (quoting *Commonwealth v. Hilliard*, 270 Va. 42, 49 (2005)).  "The demand must be stated such that a 'reasonable police officer under the circumstances would understand the statement to be a request for counsel.'" *Id.* (quoting *Hilliard*, 270 Va. at 49).  "If, however, a suspect's reference to an attorney is either ambiguous or equivocal, such that a reasonable officer under the circumstances would only have understood that the suspect *might* be invoking his right to counsel, the officer is not required to stop questioning the suspect." *Id.* (quoting *Hilliard*, 270 Va. at 49).

On appeal, "[t]he issue whether a suspect invoked his right to counsel presents a mixed question of law and fact, which requires the application of these constitutional standards to the facts of a given case."[4] *Hilliard*, 270 Va. at 49 (quoting *Redmond*, 264 Va. at 326).  "When an

---

[4] In consideration of this question, we note that the parties conceded in the trial court that Alberto Rodriguez was in police custody at the time Detective Echenique questioned him.  The Commonwealth continued to concede the same on appeal.

appellate court conducts its independent review of a circuit court's determination of this issue, the appellate court may review the circuit court's findings of historical fact only for clear error and must give deference to the inferences that may be drawn from those factual findings." *Id.* at 49-50 (quoting *Redmond*, 264 Va. at 327). However, where no dispute exists regarding the facts, our consideration of the trial court's denial of the motion to suppress "is restricted to a *de novo* review of the legal issue whether [appellant's] words, taken in context, were sufficient to invoke his right to counsel." *Id.* at 50.

In order to determine whether a statement is sufficiently clear, unambiguous, and unequivocal to constitute an effective invocation of a suspect's right to counsel, we consider the words the suspect actually used, as well as the context in which he spoke those words. *See id.* We do not consider any subsequent statements made by the suspect to determine whether his alleged invocation was ambiguous. *See Smith v. Illinois*, 469 U.S. 91, 97 (1984); *Stevens*, 283 Va. at 303. Rather, we look only to the alleged "request for counsel [and] the circumstances leading up to [that] request." *Smith*, 469 U.S. at 98.

Thus, the statement that Alberto Rodriguez argues constituted his invocation of his *Miranda* rights is properly considered in the context of the statement's pre-request circumstances as well as the language used. *See id.* at 99-100 (pre-request circumstances are relevant to determining the clarity of the request); s*ee also Stevens*, 283 Va. at 303 (finding that "the determination regarding the request for an attorney during a custodial interrogation" is not "limited to consideration of only the words spoken"). "While post-request responses to questioning may not be used to 'cast retrospective doubt on the clarity of the initial request itself,' pre-request circumstances are relevant to determining the clarity of the request." *Stevens*, 283 Va. at 303-04 (quoting *Smith*, 469 U.S. at 99-100). If those circumstances would lead a reasonable police officer to conclude that the accused's statement concerning a lawyer could

have been for a reason other than to obtain a lawyer's presence at the custodial interrogation, the officers are entitled to proceed with questions to clarify the accused's meaning. *See Davis v. United States*, 512 U.S. 452, 461 (1994) ("[W]hen a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney."); *Cooper v. Taylor*, 103 F.3d 366, 373 (4th Cir. 1996) (Luttig, J., concurring) (accused's response to officer's question about a desire for a lawyer was ambiguous in the context of the immediately preceding questions and answers).

Whether a suspect has invoked his right to counsel during a custodial interrogation is an objective inquiry and the invocation of the request for counsel must be such that "a reasonable officer in light of the circumstances" would understand the statement to be a request to have counsel present for the interrogation. *Davis*, 512 U.S. at 459; *see also Zektaw v. Commonwealth*, 278 Va. 127, 136 (2009); *Redmond*, 264 Va. at 328.

The circumstances in the case before us involved an exchange between a detective and Alberto Rodriguez in which the detective first presented the protections afforded under *Miranda*; Alberto Rodriguez's response immediately after reflected his understanding of those protections. When Alberto Rodriguez asked for information about the allegations against him, Detective Echenique said that a girl had accused him of rape; the detective asked if Alberto Rodriguez knew the meaning of the term "rape." As stated above, this exchange followed:

> [Accused]: I have to answer all your questions without a lawyer[,] or . . . .
>
> Detective: You tell me. You are not under arrest. I told you on the street and I told you here. You are not under arrest[.]
>
> [Accused]: Because I don't want to, I don't want to be answering the question to you when I don't even have the answer, when I should have a lawyer, when afterwards everything that I've been talking to you is going to be used against me. Do you understand me?

- 9 -

Detective:  Exactly[.]

[Accused]:  Right.  I don't understand why you have me here to ask me those questions when I don't have to answer the question if I don't have a lawyer.

Detective:  O[k.]

[Accused]:  In any case, I would need a lawyer to answer that question for you[.]

Viewing Alberto Rodriguez's statements objectively, and in the context that preceded them, we conclude that he unequivocally and unambiguously invoked his right to counsel. During a telephone conversation with his wife, and within Detective Echenique's hearing, Alberto Rodriguez mentioned that he thought he needed a lawyer to speak to the officer.  After further discussion with the detective about E.N.'s accusations, Alberto Rodriguez said that he *did not want* to answer questions when he "should have a lawyer."  Alberto Rodriguez stated that he did not understand why the detective was asking him questions when he did not have to answer without a lawyer.  With this context, Alberto Rodriguez's final statement, "I would need a lawyer to answer that question for you," constituted a clear invocation of his right to counsel when considered from the perspective of a reasonable police officer.  *See Zektaw*, 278 Va. at 138 (defendant's statement that "I'd really like to talk to a lawyer" was a clear invocation of right to counsel); *Hilliard*, 270 Va. at 52 (finding clear invocation of right to counsel where defendant said, "Can I get a lawyer in here?" and "I already have a lawyer.  I mean I can talk to you, don't get me wrong.  But I just want to make sure I don't, like I said before, just jam myself up."); *see also Edwards*, 451 U.S. at 487 (defendant's statement "I want an attorney before making a deal" was a clear invocation of his right to have an attorney present).

In accordance with the rule of *Edwards*, the police were not permitted to question Alberto Rodriguez further after he invoked his right to counsel, and his subsequent statement, including

his admissions of touching E.N. wrongfully, were inadmissible. Thus, the trial court erred in denying Alberto Rodriguez's motion to suppress his statement to the police.

Harmless Error

The Commonwealth contends that even if the trial court erred in denying the motion to suppress, any error in the admission of his statement to the police was harmless.

Once this Court determines a trial court erred, it is the Commonwealth's burden to show the error was harmless. *See Montgomery v. Commonwealth*, 56 Va. App. 695, 702 (2010). When addressing error involving a constitutional violation, the Commonwealth must prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Quinn v. Commonwealth*, 25 Va. App. 702, 719 (1997) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). "The admission of evidence obtained in violation of the federal constitution is reversible error if 'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Id.* (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963)).

"The court conducting a harmless-error inquiry must appreciate the indelible impact a full confession may have on the trier of fact, as distinguished, for instance, from the impact of an isolated statement that incriminates the defendant only when connected with other evidence." *Id.* at 720 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 313 (1991) (Kennedy, J., concurring)). "A confession is like no other evidence." *Fulminante*, 499 U.S. at 296. "Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct.'" *Quinn*, 25 Va. App. at 719-20 (quoting *Fulminante*, 499 U.S. at 296). "Certainly, confessions have

- 11 -

profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." *Id.* at 720 (quoting *Fulminante*, 499 U.S. at 296).

In addition, unlike a sufficiency analysis, which "asks whether a rational jury *could have* found the defendant guilty," harmless error review "looks at the other side of the reasonable-doubt spectrum" and asks whether "'a rational [factfinder] *would have* found the defendant guilty absent the error.'" *Commonwealth v. White*, 293 Va. 411, 422 (2015) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

In this case, E.N. stated that she reported the sexual abuse to her aunt in 2018. However, there was no evidence that the aunt, assuming that E.N. told her about the touching incidents, ever acted upon the allegations or revealed the information to E.N.'s mother, who was her sister. Though E.N. was at home with her family in Baltimore and a distance away from Alberto Rodriguez, she did not raise the allegations with anyone until she made the report to her mother two years later. Inconsistent with her trial testimony, E.N.'s mother testified that E.N. reported Alberto Rodriguez had penetrated her vagina with his penis. If E.N.'s delay in reporting to her mother and any inconsistency in her description of the incidents left the jury uncertain about her credibility, it reasonably could have resolved that uncertainty in the Commonwealth's favor by concluding that Alberto Rodriguez admitted to Detective Echenique that he touched E.N.'s vagina twice, thus lending support to E.N.'s credibility.

As a result, we cannot say that it is clear beyond a reasonable doubt that a rational jury would have found Alberto Rodriguez guilty in the absence of his statement to Detective Echenique. *See id.* Accordingly, we conclude that the trial court's error in denying appellant's motion to suppress was not harmless.

CONCLUSION

For the foregoing reasons, the trial court erred in denying the motion to suppress Alberto

Rodriguez's statement to the police.  Therefore, we reverse Alberto Rodriguez's convictions and

remand the matter to the court below for further proceedings consistent with this opinion, if the

Commonwealth is so inclined.

*Reversed and remanded.*